

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

15 CV 584 [BMC][LB]

AMENDED COMPLAINT
JURY DEMAND

POSR A. POSR

                 Plaintiff,

   . against .

JURY TRIAL DEMANDED

**JOSEPH ADDABBO** AS FORMER COUNCILMAN - - **THOMAS CAMPAGNA** AS FORMER QUEENS CONSULTING ENGINEER - - **DANIEL MULLER** AS FORMER ACTING CORPORATION COUNSEL - - **CLAIRE SHULMAN** AS FORMER QUEENS BOROUGH PRESIDENT - - **MOGHABHAI K. DESAI** AS FORMER TOPOGRAPHICAL ENGINEER - - **JOHN CICCIARIELLO** AS DIVISION HEAD OF HOUSE NUMBERS OF QUEENS TOPOGRAPHICAL UNIT - - **MICHAEL DiVERNIERO** AS FORMER QUEENS BOROUGH PLANNER - - **FRANK P.** BOCCHIOCHIO AS FORMER ADMINISTRATIVE SUPERINTENDENT HIGHWAY OPERATIONS - - **WILLIAM H. VIDAL** AS ASSISTANT CORPORATION COUNSEL ATTORNEY - - **WARREN SHAW** AS SENIOR CORPORATION COUNSEL OF THE REAL ESTATE DIVISION - - **DANIEL G. SAAVEDRA** AS AS ASSISTANT CORPORATION COUNSEL ATTORNEY - - **HELEN C. MARSHAL** AS FORMER QUEENS BOROUGH PRESIDENT - - **MARK McMILLAN** FORMER COUNSEL FOR HELEN C. MARSHALL - - **ROCCO RINALDI** AS FIRE DEPUTY CHIEF - - **PROSECUTOR X** - - **PROSECUTOR Y** - - **RICHARD A. BROWN** AS QUEENS DISTRICT ATTORNEY - - **JUDGE GIA MORRIS** - - **LAWRENCE K. MARKS,** CHIEF ADMINISTRATOR OF THE COURTS - - **CON EDISON INC.** - - **ANTHONY POLLINA** AS CON ED REVENUE SPECIALIST - - **ANTHONY PASCALE** AS DEPUTY INSPECTOR - - **MARK COMPETELLO** AS POLICE OFFICER - - **MELINDA KATZ** AS QUEENS BOROUGH PRESIDENT - - **CITY OF NEW YORK**

                         Defendants

---

## PARTIES

[0]    Posr A. Posr is, at all times, the plaintiff, 703 N.Orange St., Wilmington,

Delaware, 19801 who, as the agent of land owner Kris Gounden, was given the perpetual

5th Amendment " Calling " authority to guard Gounden's property, on lot 162 in Block

14228, Howard Beach/Ramblersville in Queens, New York [Gounden's private lot],

against trespass since long before 2013 Aug 08, the date of plaintiff's arrest in this

complaint. Criminal Court Index No. 2013QN043991. Disposition dismissing the

complaint on 2013 Oct 17.

## DEFENDANTS

[1]     **Joseph P. Addabbo Jr**, Senate District Office, 159-53 102nd Street, Howard

Beach, NY 11414, is a registered attorney in the State of New York and is, at all times,

sued in his individual and official capacities and as the indemnified Councilman who

knowingly falsely told Gounden that the present unfenced part of lot 162 had an easement

on it resulting from a Sewer Project Map knowing that that Sewer Project Map had not

ever been filed with either the City Planning Commission or the City Council or the

Mayor's Office nor was any easement or street application filed with the Appellate

Division Second Department as authorized by the Eminent Domain Procedure Law

which controls all real property Enterprise Capacity acquisitions by the City of New York

pursuant to §§ 705, 208 of the EDPL.

The Hate Crimes Unit of the Department of Police of the City of New York

installed security cameras around Gounden's property in response to Michael Hussey

charging onto Gounden's property, brandishing a baseball, shouting obscenities, calling

Gounden and his guests " niggers ".

Far from condemning Hussey's hate-crime attack, Addabbo responded to Michael

Hussey's obscenities and calling Gounden and his guests niggers and shouting " I'll kill

you " with a baseball hat in hand by saying [ about Gounden ], " He knew Howard Beach. He knew its history…."

By " history " Addabbo was referring to both unreported racial incidents and the reported 1986 hate crime's death of Michael Griffith accompanied by the savage beating of Griffith's stepfather Cedric Sandiford; the 1998 Broad Channel Labor Day parade float " Black to the Future: 2098 " where a police officer and fire fighters wore black face and fire fighter Jonathan Walters mocked the hideous 1997 Jun 07 Jasper, Texas dragging death of James Byrd of African descent, he 2005 hate crime beating of Glen Moore by Nicholas " Fat Nick " Minucci; Mr. Minucci's 2001 Sikh attack; and, in general, the reputed racist reputation of Howard Beach.

In one instance of police turning a blind eye to Gounden's neighbors' racist behaviors, taunts and trespasses although Gounden called 911 and reported that Scott Statland assaulted Gounden, the NYPD falsely claimed it could not find a sprint report of Gounden's call although Gounden's FOIL request provided pictures of his cell phone's display of the time, date and number of his cell phone's call and Gounden provided the license plate of the 106th precinct van that responded to Gounden's 911 call.

[2]  **Thomas Campagna**, former Consulting Engineer for the Borough of Queens, 155-20, Queens Blvd., Queens, N.Y, 11424., is at all times sued in his individual and official capacities as the indemnified Engineer who also knowingly falsely, in support of Addabbo, told Gounden that an easement on lot 162 resulted from said Sewer Project Map knowing that that Sewer Project Map had not been filed with the City Planning

Commission or the Appellate Division Second Department as authorized by the Eminent Domain Procedure Law.

[3] **Daniel Muller**, Dept. of Law, 100 Church St., New York, New York, 10007, is at all times,, sued in his individual and official capacities, as the

Former Acting Corporation Counsel, indemnifiable by the City of New York, who signed the Opinion of Dedication on 1996 Sep 17, for, but not limited to, failing to properly train, supervise and establish safeguards to prevent the Department of Law for the City of New York from using Opinions of Dedications to [a] illegally circumvent the City Charter's public street establishment process invested in the City Planning Commission, [b] violate General Obligations Law 5-703 subd. [1] owner subscription requirement for dedications of private property to local governments, [c] illegally circumvent the local government private property acquisition process as expressed in the Eminent Domain Procedure Law and [d] slander title all while reasonably foreseeing the possibility of arrests on private property falsely portrayed as property with a public character.

[4] **Daniel G. Saavedra,** 100 Church St., New York, New York, 10007, is at all times, Dept. of Law,, sued in his individual and official capacities, as the presently Acting Assistant Corporation Counsel, who filed a letter, dated 2016 Feb 05, of intention to condemn the arrest area without, but not limited to, a Mayoral Authorization Order, without demonstrating to the Court compliance with the EDPL, without giving notice of an intention to apply to the Supreme Court, Queens County for permission to condemn

the arrest area under § 402[B] of the EDPL, without supplying required maps to the Court.

[5]    **Warren Shaw,** 100 Church St., New York, New York, 10007, is at all times, Senior Counsel of the Real Estate Division of the Corporation Counsel, who like Saavedra and Vidal, represented, on 2011 Mar 22, without compliance with the sections of the Administrative Code that applies to Corporation Counsels' representations as set out for Vidal and Saavedra above.

[6]    **Claire Shulman,** 155-20, Queens Blvd., Queens, N.Y, 11424, is at all times, sued in her individual and official capacities, the Former Queens Borough President, indemnifiable by the City of New York for, but not limited to, [a] participating in a scheme to illegally acquire private property for the City of New York by unauthorizedly avoiding the mandated City Charter process for establishing a public character on private land and by unauthorizedly avoiding, but not limited to, the controlling State law for Enterprise Capacity road openings in violation of the Common law of Dedication, General Obligations Law 5-703 subd. [1], General City law 36[2] and the Eminent Domain Procedure Law.

[7]    **Moghabhai K. Desai Former Topographical Engineer,** 155-20, Queens Blvd., Queens, N.Y, 11424, is at all times, sued in his individual and official capacities, as indemnified by the City of New York, for the affirmative fraud of signing his name to the 1996 Sep 03 slanderously fraudulent statement: " ...No controversy now exists or ever has existed with regard to the City's Title in this street. "

[8]    **John Cicciariello**, 155-20, Queens Blvd., Queens, N.Y, 11424, is at all times, sued

in his individual and official capacities, the Queens Borough President's Division Head

for House Numbers, Reports and Record Room Division in the Topographical Unit of the

Queens Borough President's Office who calculatedly authored DOT employee Michael

Diverniero's false-field-observances affidavit knowing Diverniero had a desk job, and

whose fraudulent alteration of the Street Status Index map [1] and portrayal to this Court of

a borough " Street Index Map " as the " Official Final City Map " [2], and whose false

portrayal to this Court of a post 2010 Aug 02 tax map with an easement as the official tax

map he filed into a packet in 1996 [3], and whose knowingly fraudulent testimony before

this Court identifying land not on the Official Final City Map as accepted by the City of

New York as an official " public street " [4], and who fraudulently and knowingly

slandered title to lot 162 by placing the privately owned footpath " Broadway " on lot 162

in the Street Index Map and in an exhibit in Index No. 3005/12, after 2010 Aug 02, even

though official City surveys and other official Final and Alteration maps were in

defendant Cicciariello's conscious actual possession and even though official deeds

---

[1] Exh. 1 - Queens Street Status Index map. The City Charter, L. 1962, ch 998, § 202[b], prevents city employees from considering an easement public unless a record of that easement appears on the Official Final Section and Official Final Alteration Map Trans., 2010 Aug 19, pg 9, lines 15 - 16, Gounden v City, 10 cv 3438, doc # 85

[2] Exhibit 2 - Document 85, Trans., 10 cv 3438, EDNY, 2011 Mar 22, pg 123, Lines 6-8- - - " In this case...it [Opinion of Dedication " ] is construed that the City has claimed some type of easement title to the areas in question ". However, the City Charter and the § 402[b] of the EDPL bar the City from construing land as having a public character until that land is on the Official Alteration or Final map, signed by the Board of Estimate or until other conditions are satisfied

[3] Exhibit 2 Document 85 ,Trans., 10 cv 3438, 2011 Mar 22, pg 109, line 6 - pg 110, line 2

[4] Exhibit 2 Document 85 , Trans., 10 cv 3438, 2011 Mar 22, pg 115, lines 23 - pga 116, lines 1 - 2

accessed by Defendant Cicciariello placed the privately owned boardwalk footpath "

Broadway " squarely and only in lots 771 - 782 in Block 14228

and who, under oath, knowingly attempted to validate the perjured affidavit of DOT

employee Michael DiVerniero [5] and whose utter lack of specificity of metes, bounds,

minutes and degrees in the Street Report was testified to [6] as " information that was old

and very vague…" in short, defendant Cicciariello's knowingly fraudulent portrayal in

and to this Court [ of the City as having legally acquired a legal interest in lot 162

[ through the fraudulent use of an affidavit supporting a so - called Corporation Counsel

Opinion [Opinion of Dedication] ] was asserted for the purpose of furthering the illusion

of the City's legal estate in lot 162 which defendant Pascale and Competello conceptually

seized upon to unlawfully interfere with plaintiff's 5th Amendment " Calling "

entitlement to guard Gounden's private property from trespass, all of which privileged

plaintiff from, among and including all the other other charges, arrest for unlawful

imprisonment.

**[9]    Michael DiVerniero Former Queens Borough Planner,** 55 Water Street, 9th

floor, NYC 10041, is at all times, sued in his individual and official capacities, as, but not

necessarily, indemnified by the City of New York, for the affirmative fraud of signing his

name a 1996 Aug 05 affidavit in which he bore false witness to facts in said affidavit that

were ultimately used to justify keeping private land open to random vehicular traffic as if

---

[5] Gounden v City of New York, 10 cv 3438, EDNY, Doc # 85, Transcript, 2011 Mar 22, pg 104, lines 16-17

[6] Gounden v City of New York, 10 cv 3438, EDNY, Doc # 85, Transcript, 2011 Mar 22, pg 129, lines 19-23

a public street existed upon which Pascale seized in arresting plaintiff for blocking a

public street, when plaintiff had a 5th amendment calling privilege against arrest for

guarding Gounden's property against trespass.

And DiVerniero, at all times, having testified to a City policy of Opinion of

Dedication title transfers. [7]

**[10]   Frank P. Bocchiochio Former Administrative Superintendent of Highway**

**Operations,** 155-20, Queens Blvd., Queens, N.Y, 11424, is at all times, sued in his

individual and official capacities, as indemnified by the City of New York, for the

affirmative fraud of stating that an " ...Opinion is required for the maintenance

resurfacing of this street...." when L.1962, ch 998, § 202[b] prohibited Bocchiochio from

deeming private property a street unless the land is on the City Final Map approved by

the Board of Estimate and when General City Law § 36[2] authorizes City services to

private property without Title and General City Law § 36[2] authorizes City services to

private property without an Opinion that some owner dedicated that owner's land, which

is an opinion of Title.

**[11]   William H. Vidal,** 100 Church St., New York, New York, 10007, is at all times,

sued in individual and official capacities, who, fully familiar with the concept and term "

Enterprise Capacity", committed a fraud on this Court by having solicited the perjury of

John Cicciariello and Michael Diverniero, knowing that Diverniero admitted, in a prior

deposition, to falsely swearing to observing facts that Diverniero had not in fact

_____

[7] Exhibit 2 - Transcript, *Gounden v NYC, 10 cv 3438, Doc # 85, pg 208, lines 1 - 13*

observed, and knowing that the Law, Police and Fire Departments are legally prohibited by City Charter L. 1962, ch 998, § 202[b] and " controlling " State EDP law [ §§ 705, 402[B]], from assuming a parcel of land's as a public street until that parcel is duly recorded as a public street, with Board of Estimate approval, on the " City's" " Official Final " Section and Alteration Maps with every certifying letter of the signature of the Chairperson of the Board of Estimate on those " Official Final " Section and Alteration Maps and defendant Vidal is at all times the Corporation Counsel attorney, knowing that General City law 36[2] has no acquisition provision, suborned said perjuries calculatedly and materially intending to create the illusion of the City's legal acquisition of a legal interest in lot 162 upon which illusion defendant Pascale seized to knowingly and falsely justify ordering the arrest of plaintiff thereby wrongfully interfering with plaintiff's 4th Amendment right to be free from arrest and interfering with plaintiff's 5th Amendment entitlement to follow the calling of protecting Gounden's land from being regressively trespassed.

[12] **Helen C. Marshal**, 155-20, Queens Blvd., Queens, N.Y, 11424, is at all times, sued in her individual and official capacities, as the Former Queens Borough President, as indemnifiable by the City of New York for, but not limited to, [a] participating in a scheme to illegally acquire private property for the City of New York by unauthorizedly avoiding the mandated City Charter process for establishing a public character on private land and by unauthorizedly avoiding, but not limited to, the controlling State law for Enterprise Capacity road openings in violation of the Common law of Dedication,

General Obligations Law 5-703 subd. [1], General City law 36[2] and the Eminent Domain Procedure Law.

**[13] Mark McMillan**, Rosenbaum & Bianco, LLP, 100 Merrick Rd Set 306, Rockville Centre, NY 11570-4800, is at all times, sued in his individual and official capacities as the Former Counsel for the Former Borough President Helen C. Marshal as indemnifiable by the City of New York in that after President Marshall ordered McMillan to oversee payment to Gounden, Cicciariello approached McMillan with the alleged Opinion of Dedication and, on the basis of the alleged Opinion of Dedication, McMillan refused to cause payment to be issued to Gounden and instead refused to notify Gounden of the Opinion of Dedication as the basis for not serving Gounden with payment

**[14] Deputy Inspector Pascale**, Internal Affairs, 315 Hudson St., Rm 328, New York, NY, 10013 is at all times, sued in his individual and official capacities, a very high policy-level ranking police officer of the City of New York who refused to arrest Pollina for Pollina's initial or secondary trespasses and who was in command of the 106th precinct in Queens, New York for a number of years by 2013 Aug 08, and who knew from a multitude of Gounden's neighbors' complaints about Gounden blocking off lot 162, and who therethrough knew lot 162 was privately owned with no foreign private or public easements or title or legal interests, and who, having been unable to reasonably determine that agent plaintiff Posr was not privileged from arrest for, among and including all the other charges, unlawful imprisonment [ for guarding Gounden's privately owned and un-eased upon lot ] ordered plaintiff's arrest while this authorized

plaintiff was peacefully and restfully reposed on Gounden's van as the van was parked on

Gounden's private and un-eased upon property which protected Gounden's private lot

against defendant Pollina's unauthorized vehicular trespass from lot 772 - 773 onto lot

162, and Inspector Pascale, in a violation of Pascale's supervisory capacity, knowingly

ordered plaintiff's false arrest, and subsequently supervised plaintiff's false

imprisonment, malicious and selective prosecution, in conscious furtherance of the City's

unconstitutional use of the unconstitutional Highway Law § 189, the City's federally

facially and as applied unconstitutional General City law § 36[2] and the City's

unconstitutional application of a long standing motion practice of issuing and

prosecuting, through the Department of Law, " Opinions of Dedication " in the City's

road-opening-widening Enterprise Capacity, all for the purpose, in this case, of

maintaining a private drive way for Gounden's easterly neighbors.

[15] **P.O. Mark Competello**, 106th Precinct, 103-53 101St, Ozone Park, NY,

11417-1707, is at all times, sued in his individual and official capacities, a police officer

of the City of New York who physically cuffed, imprisoned and prosecuted plaintiff's

accusatory instrument charging plaintiff with, among and including all the other charges,

unlawful imprisonment without having been able to reasonably determine that plaintiff

Posr was not privileged from arrest for, among and including all the other charges,

unlawful imprisonment for guarding Gounden's privately owned and un-eased upon lot.

[16] **Con Edison**, 4 Irving Place, NYC, 10003, is at all times sued in its individual and

official capacity and is the utility company who was aware of Gounden's daughter's

asthmatic condition and who failed to train, restrain and supervise its employees to recognize, respect and not, without a Court Order, and not without Public Service Law § 47 compliance, trespass onto private property and who had been informed of its employees' trespass on lot 162 the day before arrest and who failed to properly restrain and train its employees to consult instruments demonstrating legal interests in order to avoid trespassing private property.

**[17]   Con Ed Revenue Specialist Anthony Pollina,** 4 Irving Place, NYC, 10003, is at all times the Con Edison Worker sued in his individual capacity and official capacity who, conspiring with Pascale, knowing Pollina did not have express or implied consent, trespassed Gounden's land to reach lots 772-773 which were not owned by Gounden and who calculatedly and fraudulently claimed to defendant Pascale [from information provided by Pascale] that Pollina was prevented from proceeding to an " emergency " within the meaning of Public Service Law 47 and who fraudulently and with reckless disregard for the truth [from information provided by Pascale] claimed part of lot 162 as a " public roadway " in his Answer to Gounden's Complaint in order to falsely induce plaintiff's false arrest for the purpose of Pollina's trespass from lot 772-773 onto lot 162 and Pollina engaged in an abuse of process by his filing of a supporting deposition that he knew falsely portrayed an " emergency " where none existed and who conspired with Inspector Pascale to falsely arrest and imprison plaintiff for the unlawful purpose of permitting Pollina's trespass from lot 772-773 onto lot 162 and for the unlawful purpose

of interfering with plaintiff's 5th Amendment and State entitlement to pursue the lawful

calling of preventing trespass to Gounden's privately owned land.

[18]    **Melinda Katz**, 155-20, Queens Blvd., Queens, N.Y, 11424, is at all times, Queens

Borough President, former Chairwoman of the City Council Land Use Committee, sued

in her knowledgeable individual and official capacities, as Queens Borough President for,

after promising to, refusing, after having been personally informed by Gounden, to meet

with Gounden and who has consciously chosen to fail to cause Gounden's payment for

the condemned part of lot 162, with the calculated effect of supporting enforcement of the

City's control of the arrest area, while that control includes the control of access through

lot 162 by D.I. Pascale's order to arrest plaintiff and Orders of other officials as well.

[19]    **Queens County District Attorney, Richard A. Brown**, 125-01 Queens Blvd.,

Kew Garden, NY, 11415, is at all times, sued in his individual and official capacities,

responsible for training and supervising Queens County Assistant District Attorneys and

who failed to train and/or supervise the prosecuting Assistant District Attorney/s [ADA]

regarding the Divestiture of Jurisdiction provisions of CPL § 170.25, 28 U.S.C. §

1446[D] and § 208 of the Eminent Domain Procedure law.

[20]    **Prosecutor X**, 125-01 Queens Blvd., Kew Garden, NY, 11415, is at all times, who

may be Za, Wistows or Ki, Kenneth sued in his individual and official capacities, an

Assistant District Attorney of the City of New York who initially approved the

prosecution of plaintiff's accusatory instrument charging plaintiff with, among and

including all the other charges, unlawful imprisonment without having been able to

reasonably determine that plaintiff Posr was not privileged from arrest for unlawful imprisonment for guarding Gounden's totally privately owned and un-eased upon lot where public does not exist.

[21] **Prosecutor Y**, 125-01 Queens Blvd., Kew Garden, NY, 11415, who may be Za, Wistows or Ki, Kenneth, is at all times, sued in his individual and official capacities, an Assistant District Attorney of the City of New York who, thereafter prosecuted plaintiff's accusatory instrument charging plaintiff with, among and including all the other charges, unlawful imprisonment who, on info and belief, made a motion to dismiss the charges in the interest of justice when the jurisdiction to prosecute in the local criminal court had been divested to the Supreme Court pursuant to CPL 170.25 and to the EDNY pursuant to FRCP 1446[D].

[22] **Rocco Rinaldi**, 9 Metrotech Center, Brooklyn, New York, 11201, is at all times, sued in his individual and official capacities, a high ranking Deputy Chief Fire Department official to whom, by selectively applying " fire safety criteria " illegally, without issuing Gounden a written order, induced the removal of Gounden's boulder on lot 162 [8], which met Addabbo's original mindset contributed to the permanent opening of a " narrow dirt thruway " on Gounden's private property, all of which was knowingly and falsely seized upon by Pascale and Competello as a false basis upon which to have determined that plaintiff was not privileged from arrest for, among and including all the other other charges, unlawful imprisonment.

---

[8] Exhibit 2 Document 85 ,Trans., 10 cv 3438, 2011 Mar 22, pg 67, line 21...pgs 97, line 11 - pg 98, line 15

[23]   **Chief Administrator of the Courts Lawrence K. Marks** or his successor, 25 Beaver St., Rm. 852, New York, NY, 10004, is, at all times, sued in his individual and official capacities, for failing a duty, under Judiciary law 219-a, to adequately supervise, monitor and/or direct or independently compliment the Judicial Institute's education and training of State Judges with regard to the dignity of self-representatives in areas including, but not limited to, Divestiture of Jurisdiction pursuant to CPL 170.25[1], [3], CPLR 105[c] which includes self-representatives in the definition of the word " attorney " and 28 U.S.C. § 1654 which federally authorizes self-representation and the conclusion that, as a matter of law or reason, self-representation is synonymous with not having "..a clear mind...", with not being "...able to think. ", with being intellectually incapable of effective self-representation" and " it is never advisable to represent yourself without an attorney. " as repugnant to the law and to the function of the Judiciary.

[24]   **Morris, Gia, J.,** 125-01 Queens Blvd., Kew Garden, NY, 11415, is at all times, sued in her individual and official capacities, the Judge of the Criminal Court of the City of New York, Queens County, who, in violation

of CPL § 170.25 [ Divestiture of Jurisdiction ] falsely assumed the expressly exclusive competence of the Supreme Court Criminal Term to grant or deny plaintiff's motion to prosecute a misdemeanor by indictment. Morris, J.'s denial of plaintiff's removal motion is clearly indicated on the Record of Court Action Sheet.[9] It was within the Supreme

---

[9] Exhibit _____ - Record of Court Action, Morris entry dated 2013 _____ ___

Court, Criminal Term's exclusive competence and not within the divested competence of the Local Criminal Court to have dismissed in the interest of justice.

Morris, J. also falsely assumed the exclusive competence of the Supreme Court Criminal Term to grant or deny removal based entirely on § 208 of the Eminent Domain Procedure Law as § 208 was set out in the § 170.25 motion to remove to the Supreme Court Criminal Term.

[25] **Toko, Serita, J.,** 125-01 Queens Blvd., Kew Garden, NY, 11415, is at all times, sued in individual and official capacities, the Judge of the Criminal Court of the City of New York, Queens County, who, after the criminal case had been dismissed [albeit without competence or assignment] on 2013 Oct 17, surreptitiously crept into the shadows of the record room and simply inserted a decision, dated 2013 Oct 17, overruling Morris, J. acknowledging the divestment of the Local Criminal Court and setting a date for plaintiff to have filed a § 170.25 motion in the Superior Court 30 days after the case had been, without competence, dismissed which had the effect of concealing the improper roles and adjudication of, but not limited to, Addabbo, police, prosecutors and Morris, J. in maintaining the illegal opening of the arrest area, which provided intellectual cover for plaintiff's false arrest.

**Toko, J.** did not administratively enter the 2013 Oct 17 decision on the Record of Court Action Sheet, Toko, J. did not administratively notice plaintiff that Toko, J. had been properly assigned to reopen the case. Toko, J.'s 2013 Oct 17 decision now gives the false impression that plaintiff failed to timely file the § 170.25 motion in the Superior

Court. Toko, J's 2013 Oct 17 decision was first discovered by plaintiff on or about 2016 Feb 03 as part of the City's Disclosure obligations.

[26]    **The City of New York** is, 100 Church St., New York, New York, 10007, at all times, sued in its individual and official capacities and is minimally grossly negligent in failing to properly train, restrain and supervise its agents, although having reasonably foreseen over a nine year period its agents falsely seizing persons and property authorized by Gounden to be on Gounden's private property, and the City, through its high ranking agents, acted in the City's Enterprise Capacity to further Addabbo's mindset and course to forcibly and illegally open and maintain open access through lot 162 for and only for Gounden's eastern neighbors, in facial and applied contradiction to the 4th, 5th, 6th and 14th Amendments, in facial and applied contradiction to a multitude of Articles of the State Constitution, in facial and applied contradiction to several provisions of the Eminent Domain Procedure Law [EDPL], in facial and applied contradiction to General Obligations law [ Gen Obl law] § 5-703 subd. [1], in facial and applied contradiction to, among and including other sections of the City Charter, L.1962, ch 998, § 202[b] of the State authorized Charter of the City of New York's requirement that a public parcel appear on the City's Final Official Map, in facial and applied contradiction to General City Law § 29, among and including other legal, requirements that a layout or plan for a public street be submitted to the Department of City Planning, in facial and applied contradiction to Fire Department requirements that Fire Department Orders be issued in writing to owners of obstacles in the path of the legal means of in and egress, knowing

that Christopher Jones [lot 781, 782] and Frank Paradise's [lot 780] have fenced in the

real " Broadway " which is the legal means of in and egress along and between the

houses on both sides of Broadway in lots 771 - 778, and the City acted in conscious

furtherance of the City's unconstitutional use of the unconstitutional Highway Law § 189,

the City's federally facially and as applied unconstitutional General City law § 36[2] and

the City's unconstitutional application of a long standing motion practice of issuing and

prosecuting, through the Department of Law, " Opinions of Dedication " in the City's

road-opening-widening Enterprise Capacity, all for the purpose, in this case, of

maintaining a private drive way for Gounden's easterly neighbors, all of which directly

resulted in plaintiff's false arrest, false imprisonment and malicious and selective

prosecution for Unlawful Imprisonment and all the other derivative charges.

## JURISDICTION

[27]    Pursuant to 42 U.S.C. § 1983, any person who under color of any

statute...subjects, or causes to be subjected, any citizen...to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress, except

that in any action brought against a judicial officer for an act or omission taken in such

officer's judicial capacity, injunctive relief shall not be granted unless a declaratory

decree was violated or declaratory relief was unavailable.

[28]    Pursuant to 42 U.S.C. § 1985,  there was a non-hearsay well documented, knowing

and continuously renewing meeting of the minds, documents and actions from 1994 until

2013 Aug 08 of Shulman, Marshall, McMillan, Katz, Miller, Pollina, Prosecuting agents,

Saavedra, Vidal, Cicciariello, Rinaldi, DiVerniero, the City of New York and Judges Toko

and Morris to violate the State and Federal Constitutions, State law and the City Charter

to illegally acquire private property as " acquisition ", as defined by § 103[A] of the

EDPL and culminating with Pascale's [ or other police agent/s] order to arrest plaintiff.

[29]    Pursuant to 42 § 1981, plaintiff had a right to the equal benefit of the 5th

Amendment and State right to pursue the lawful calling of guarding private property

against trespass as is enjoyed by white citizens where, under of color of Public Service

Law § 47, Pollina joined what was, in part, a coordinated racially motivated deprivation

of private property which plaintiff was guarding against.

[30]    Among and including all the other other consequences, these collective and

separate acts of the defendants resulted in the violation of plaintiff's entitlement to

exercise his state and federal right to follow a lawful calling, to remain un-arrested and

free unless upon reasonable or probable cause, to be treated equally and not to be

prosecuted or abused with a Court process.

[31]    Pursuant to 28 U.S.C. § 1331, supplemental jurisdiction, authorizing a federal

Court to hear and decide violations of State law.

[32]    This Court's jurisdiction also arises under Fed.R.Civ.P.15[a][1][B] authorizing a

complaint's amendment once as a matter of course, if the pleading is one to which a

responsive pleading is required...". An answer to this pleading is required.

### VENUE

[33]    As all the City defendants' actions are in Queens laying the foundation for the

Pascale-ordered arrest on charges of Penal Laws §§ [a] 135.05 [unlawful imprisonment],

[b] 195.05 [Obstruction of Governmental Administration], and [c] 240.20-5 [Obstructing

vehicular or pedestrian traffic] took place on lot 162 at 1 Bayview Avenue, Queens, New

York, and as Queens area is located in the confines of the Eastern District of New York,

venue is proper against defendant Pascale.

[34]    As Queens Criminal Court Judge defendant Gia Morris was required to set a date

for plaintiff to file an application for the Supreme Court of the State of New York,

Queens County to retain or redirect competence to the local Criminal Court pursuant to

CPL §§ 170.25[1], [2], [3] and Federal Rules of Civil Procedure  1446[d] venue is

properly before the U.S.D.C. E.D.N.Y.

[35]    As **Con Edison, Inc.,** is responsible for supervising and training its employees,

including Con Ed Revenue Specialist Anthony Pollina, to undergo procedures to prevent

trespassing on private property and since Con Ed Inc., was informed the day before

arrest, thru its employees, of the private property of Kris Gounden, and since Con Ed

Revenue Specialist Anthony Pollina trespassed Gounden's private land a day after Con

Ed Inc., was informed by Con Ed employees that Con Ed employees were ejected from

Gounden's private property in the Eastern District, venue and supplemental state

jurisdiction is proper.

[36]    As Con Ed Revenue Specialist Anthony Pollina trespassed land owner Gounden's

property in the borough of Queens, and as defendant Pollina directed a complaint about

plaintiff to defendant Pascale, both of which were in the confines of the Eastern District

of New York, venue and supplemental state jurisdiction, under 28 U.S.C. § 1331 and

under §§ 1983 and 1985 over defendant Pollina is proper.

## OVERVIEW

[37]   The documents reveal a racially motivated, coordinated, calculated and

intentionally wide-webbed mosaic of high level state and city agents that have broken

property and criminal laws to deplete the Goundens' resources and therethrough drive the

Goundens' residence away from the southern tip of the Ramblersville Peninsula, with its

very beautiful and picturesque southwardly view of the Hawtree Canal.

[38]   Every white homeowner in Block 14228 is permitted to fence off their property,

except Gounden. Christopher Jones, employed by the DEP, is a white land owner of lot

782 the has not only been permitted to fence off his property, he has been permitted to

extend his fence over the legal means of in and egress along the private Boardwalk

Broadway.

[39]   Gounden closed on lot 162 on 2006 in July and random people, presumably from

the area, urinated, dumped [ food, mechanical and municipal garbage] and repaired their

vehicles on lot 162 against Gounden's express orders to stop that were personally given.

[40]   Police, and all other agencies, turned a deaf ear to Gounden's complaints and

Gounden was left to fend for himself. It was reminiscent of the kind of a typical racial

bigotry picture of non-human respect one might find in the south in the 1930's and 40's.

[41]    At this time Gounden was also informed that if he had no fence, he could get no homeowner's insurance.

[42]    Undeterred, Gounden began building a fence to fence lot 162 off completely to deter trespassers and defilers of the land and neighbors who could no longer trespass lot 162 wrote and called complaints that lot 162 was no longer available as a private driveway.

[43]    Gounden was blitzed by flat tires and all manner of tickets and government agency interference and harassment by the Buildings, Police, Sanitation [10] and State Environmental Conservation Departments.

[44]    Within a month of the closing, the pretense escalated when then Councilman Joseph P. Addabbo Jr, esq., [now State Senator Addabbo] and the late Thomas Campagna [ then Queens Borough Consulting Engineer ] coordinated a joint visit to Gounden and flashed a sewer project map at Gounden and described the map as demonstrating the public character of the disputed part of lot 162.

[45]    Within a month of Addabbo's visit, police support of Addabbo's falsely described sewer project map surfaced when Gounden was threatened with arrest if he did not move a boulder from a lawless public thruway on lawful private property.

---

[10] Nine Sanitation Police with guns drawn responded to reports that a Gounden workers dumped non-dumpable trash in the Sanitation trash bin which in within 70 yards west of 102 street. The northern border of Lot 162 is apprx. 200 yards south of Block 14228's common Sanitation Trash Bin

[46]   In the course of Gounden's nine year residence, the Goundens became subject to

increasingly express, physically violent and recorded racial taunts and criticisms and

Addabbo asserted, essentially, that when Gounden faked reports of a race-based

City agency conspiracy to drive Gounden out, Gounden " caused " one Michael

Hussey's bat-wielding and verbally base racial attack.

[47]   Campangna's and Addabbo's team-presented conspiratorial " sewer project " legal

theory, in support of Addabbo's initial taking, morphed into a so-called " Opinion of

Dedication ", aka, a " Corporation Counsel Opinion [CCO] phase, when the " sewer

project " theory became obviously untenable without submissions to and without the

cooperation of the Department of City Planning.

[48]   When the CCO theory imploded, the next, last and third legal theory phase took

place; the " § 189 " phase.  In the course of the Trial and Appellate Division review of the

§ 189 phase, plaintiff was arrested for blocking a Con Edison truck from leaving lot 772,

773 and coming onto " a narrow dirt thruway ", on Gounden's private property, with the

disputed area of arrest having been referred to as a "...narrow dirt thruway " instead of a

mapped public street.

[49]   " " While provisions in other statutes [i.e. Hwy Law § 189] germane to

condemnation that are not inconsistent with the EDPL may remain relevant (see generally

Matter of Hargett v Town of Ticonderoga, 35 AD3d at 1124), provisions that are

inconsistent with the EDPL must give way to that statute. " [quoting Matter of County of

Cortland 72 Ad3d 1436, 1438 [3rd Dept. 2010]

### AS AND FOR A FIRST CAUSE OF ACTION            1st
### Civil Rights Law Article 2 § 2

**[50]**   As and for a first cause of action plaintiff reiterates all ¶¶s in full and completely

in fully, completely and separately sues, under 42 U.S.C. §§ 1983, 1985, all defendants

separately and collectively for $100,000 in compensatory state damages and for $100,000

in compensatory federal damages for violating plaintiff's state and federal right to be free

from the fraud of an exercise the City's authority under the pretense of having opened a

public or private road or easement.

### AS AND FOR SECOND CAUSE OF ACTION            2ND
### Punitive Damages : Civil Rights Law Article 2 § 2

**[51]**   As and for a second cause of action plaintiff reiterates all paragraphs in full and

completely and separately sues, under 42 U.S.C. §§ 1983, 1985, sues all defendants,

including Addabbo, for $300,000 and Campagna for $300,000 in punitive damages for

violating plaintiff's state and federal right to be free from the exercise the City's authority

under the pretense of a public street having lawfully been opened as Addabbo and

Campagna opened it.

### TIMELINE

**[52]**   In 2010 the Fire Department had Gounden's boulder removed from the " narrow

dirt thruway " alleging that the inaccessibility of emergency vehicles posed a risk to

public health and safety.

**[53]**   Not more than 50 yards north of the " thruway ", emergency vehicles are also

unable to access a three-foot wide footpath on north Bayview avenue.

[54]   The inaccessibility of emergency vehicles through north Bayview poses no risk to public health and safety according to the lack of a response from the Fire Department when Gounden pointed out the inability of Fire trucks to access through lot 162 to defendant Rinaldi and Rinaldi said something to the effect of " I need this rock moved."

[55]   Area police are more than willing to support the Fire Department's double standard designed to harass and violate Gounden into evacuating the area.

[56]   The Fire Department's double standard is simply one more inconsistency in a long line of inconsistencies that make a racially motivated basis more probable than a racially motivation basis would be without the inconsistencies.

[57]   On 1975 Sep 17th an easement indenture, Reel 897 Page 748, was made between party of the first part Charles Serio and party of the second part Brooklyn Union Gas Company giving the Gas Company the right to erect, install, etc. its gas mains through, over, across,…the following described premises: The roadbed of the *private right of way,* beginning at the easterly curb line of Bayview Ave., 430 feet south of the south curb of Arthur Ave., and extending easterly to the westerly curb line of Broadway." [11]

[58]   The private right of way in the 1975 Sep 17 indenture was known or should have been known by Pollina, Consolidated Edison, the Topographical, Fire, Law and Police Department agents and the City of New York before the Street Report of 1996 Sep 03 was signed.

---

[11]  Exhibit 9 - Serio / Brooklyn Gas easement acknowledging a private right of way.

**[59]** On 1976 Jun 22 a deed indenture [12] , Reel 996 Page 1534, was made between the

of the 1st party part City of New York and the 2nd party part Charles Serio in which the

City acknowledged any state of facts that an accurate survey would show including the

private right of way in the 1975 Sep 17th indenture in Exhibit 9.

**[60]** Serio's 1975 Sep 17th grant of an easement to Brooklyn Union Gas occurred

before Serio owned lot 162 on 1976 Jun 22.

**[61]** Serio's 1975 Sep 17th grant of an easement to Brooklyn Union Gas is null and

void.

**[62]** While Charles Serio was still alive, without notice to Serio, without opportunity to

object, without City Planning Commission permission or input, without Board of

Estimate approval, without City Council approval, without EDPL compliance and before

Serio sold lot 162 to Harry Fox by indenture dated 2001 Sep 28, allegedly, on 1994 May

05, Department of Transportation Commissioner for Queens, Frank Bocchiochio,

requested the Queens Borough President, Claire Schulman, to obtain an opinion from the

Law Department of the City of New York, not excluding, that some unknown owner, at

some unknown time, in some unknown and unsubscribed-to manner dedicated that

owner's land to the City for public use as a roadway [13] .

---

[12] Exhibit 10 - 1976 Jun 22 a deed indenture, Reel 996 Page 1534, where the City of New York releases lot 162 to Charles Serio subject to any state of facts an accurate survey would show to demonstrate the private right of way described in the 1975 Sep 17th Indenture.

[13] Exhibit 3 - Frank Bocchiocho's request for an opinion that some owner dedicated his land to the City

**[63]**   Bocchiochio 1994 request falsely stated that " Said Opinion is required for the maintenance resurfacing of this street....." .

**[64]**   The City could have implemented eminent domain procedure law procedures or to have acquired an easement to resurface the street.

**[65]**   The false basis of a public street on lot 162 began with Bocchiochio and ended with defendant Pascale's arrest of plaintiff on the street Bocchiochio falsely claimed was a public street.

**[66]**   On 1996 Sep 03 defendant Queens Borough Planner Michael DiVerniero executed a sworn-to affidavit attesting to having observed public use and City services rendered on and in Block 14228, lot 162, among and including all the other other lots [14] .

**[67]**   On 2011 Mar 22 defendant DiVerniero gave the following answers to the following questions about the 1996 Sep 03 affidavit that DiVerniero swore to: " Q...Can you attest to the truth of all the facts in this affidavit?...A: Not all, no...Q...Why not?... A. I relied on my colleagues in the Topographical Unite with some of this information. "
[15]

**[68]**   " Q...In fact, after you got this affidavit, after you checked the site, you didn't take any steps to see if this is true, did you?...A...No". [16]

---

[14] Exhibit 4 - Queens Borough Planner Michael DiVerniero's affidavit attesting to having observed public use and City services for ten or more years on and to lots 162.

[15] Exhibit 2 - Transcript. Gounden v City, 10 cv 3438, pg 199, lines 7-12, Doc # 85

[16] Exhibit 2 - Transcript. Gounden v City, 10 cv 3438, pg 210, lines 3-6, Doc # 85

[69]      " Q:  What's your basis for saying you believed this to be true when you

signed it?...A:  I have none. " [17]

[70]      "Q:  When you signed this affidavit, you didn't know if the was true, did

you?...A:  No.  Q:  When it said at the present time, at least somebody typed in the

number 3, at the present time there are at least three buildings abutting on both sides of

the street, you see that?...A:  Yes sir....Q:  You didn't know if that was true either, did

you?...A:  No.....Q:  But you signed it anyway?...A:  Yes, I did."....Q:  Isn't it a fact it

was your practice to sign these documents without doing any research into the underlying

truth of these statements?...Objection...Overruled...A:  All I could say before I signed

them, I went out, did a physical inspection. " [18]

[71]   On 1996 Aug 05, defendant DiVerniero falsely swore to observing facts that he

had not, in fact, personally observed and DiVerniero's falsely sworn-to affidavit

supported Bocchiochio's fraudulent statement that title was necessary under General City

Law § 36[2] to resurface private land that would later be called an open public street that

Pascale seized upon to arrest plaintiff.

[72]   On 2011 Mar 22 DiVerniero was asked the following questions and gave the

following answers:

---

[17] Exhibit 2 - Transcript. Gounden v City, 10 cv 3438, pg 212, lines 2-4, Doc # 85

[18] Exhibit 2 - Transcript. Gounden v City, Doc # 85 , 10 cv 3438, pg 213, lines 1-18,

Q…This isn't the first dedication affidavit you've done, correct?…A…Correct.…Q…

You've done more than ten, right?…A…Correct.…Q…Maybe more than 50? You're not

sure?…A…I'm not sure.…Q…Okay, could be more, could be less?…A…Yes. [19]

[73]     On 2016 Jan 22 the Special Assistant to the Chairman of the Department of City

Planning Dara Goldberg confirmed the existence of the Opinion of Dedication policy

writing: " Usually, the Borough President's office would indicate the CCO dedicated area

on an Index Map, which is a reference map. "

## AS AND FOR A THIRD CAUSE OF ACTION          3rd
### State Action for Perjury

[74]     As and for a third cause of action plaintiff reiterates all ¶¶s in full and completely

in full and completely and sues all defendants, including DiVerniero, for $100,000 for

compensatory state damages caused a perjurious affidavit that was ultimately used by

Pascale to falsely and knowingly portray and arrest plaintiff on private land as if it were a

public street.

## AS AND FOR A FOURTH CAUSE OF ACTION          4TH
### Punitive Damages: State Action for Perjury

[75]     As and for a fourth cause of action plaintiff reiterates all ¶¶s in full and completely

in full and completely and sues all defendants, including DiVerniero, for $200,000 in

punitive damages for perjury as set out in the immediate paragraph above.

## AS AND FOR A FIFTH CAUSE OF ACTION          5TH
### Federal Action for Perjury

---

[19] Exhibit 2 - Transcript. Gounden v City, Doc # 85, 10 cv 3438, pg 208, lines 1 - 9,

[76]   As and for a fifth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including DiVerniero, for $100,000 for the federal aspect of fraud for $100,000 in damages as factually set out in the 175th paragraph above.

## AS AND FOR A SIXTH CAUSE OF ACTION          6TH
### Federal Punitive Damages: State Action for Perjury

[77]   As and for a sixth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including DiVerniero, for $200,000 in punitive damages for the federal aspect as factually set out in the 175th paragraph above.

## TIMELINE

[78]   The certified deed for lot 771 reads: "…a certain map entitled Map #1 of the Boathouse Lots….surveyed by Evans Bros., August 1899 and filed with a deed dated October 15, 1923 and *recorded in the Queens County Clerk's Office* on November 10th 1923 in Liber 2565 page 221 of the conveyances and shown on said map as and by part of lot #7…..". [20]

[79]   On 1938 Feb 03 City surveyor James F. Deehan's map No. 129/764 - 5475 - j147 [21] , in particular, reports having retrieved the minute, degree and directional information of Broadway completely contained in the purely private lots 771 and 772 on that Deehan

---

[20]  Exhibit 6 - Copy of certified Map No. 1 of the Boathouse lots in deed # 771

[21]  Exhibit 7 - Map possessed by Topographical - # 129/764 - 5475 - J147 surveyed 1938 Feb 03

map from the minute, degree and directional information on Map No. 1 of the Boathouse lots.

[80]    The detailed minute, degree and directional information for the lots in the certified Map No. 1 in the certified deed for lot 771 does not have any semblance of a resemblance to the detailed minute, degree and directional information in Deehan's map No. 129/764 - 5475 - j147.

[81]    On 2015 October 20 Mr. Gounden retrieved the survey by City Surveyor James F. Deehan from a folder in the possession of the Office of the Consulting Queens Borough Engineer, Clara Viuker stated she did not know where the original Deehan Maps were or where they came from.

[82]    P.E. Viuker accompanied Gounden and plaintiff to Cicciariello for Cicciariello to certify City Surveyor Deehan's map No. 129/764 - 5475 - J147 and Cicciariello refused telling Gounden he was required to speak to Counsel for the Queens Borough President's Office in order to have a City survey map certified .

[83]    Either the Department of Finance's certified map which is a part of the certified deed for lot 771/772 is a fake or City Surveyor Deehan's Map # 129/764 - 5475 - J147 retrieved from Viuker's folder is a fraud.

[84]    Cicciariello lied to Gounden and plaintiff about the requirements to certify a City surveyor's map in the possession of the Borough Engineer's Office because Cicciariello knew that there were " informational  controversies and contradictions regarding " lot

162 and between [a] the *private right of way in the* 1975 Sep 17th Indenture [22] [b] The

City of New York's recognition of that *private right of way* in the 1976 Jun 22 Indenture

[23] [c] Map No. 1 of the Boathouse lots [24] and Deehan Map No. 129/764 - 5475 - J147 [25],

[d] the Opinion of Dedication [26] and the EDPL, the Opinion of Dedication and Canal Law

40[1], [e] the Opinion of Dedication and L.1962, ch 998 § 202[b], the Opinion of

Dedication and General City Law § 36[2], the Opinion of Dedication and the owner-

signature provisions for transfers of land interest in General Obligations law 5-703 subs.

[1] and finally, but not limited to, [d] Cicciariello's preparation of the Street Report [27] that

claimed "…No controversy now exists or has ever existed with regard to the City's title

in this street…".

[85]    A clerk in the Department of Finance stated to plaintiff that the original Map No. 1

of the Boathouse Lots was sent to the Topographical Unit.

[86]    The City of New York has no or has an inadequate training and supervisory plan or

process [a] to prevent the faking of maps in deeds in the Department of Finance, [b] To

track the origin and authenticity of maps coming into folders in the possession of Office

of the Consulting Borough Engineer or the House Numbers Division.

---

[22] Exhibit 9

[23] Exhibit 10

[24] Exhibit 6 - Map No. 1 of the Boathouse lots

[25] Exhibit 7 - Map possessed by Topographical: # 129/764 - 5475 - j147 surveyed 1938 Feb 03

[26] Exhibit 5

[27] Exhibit 8 - 1996 Sep 03 Street Report

[87]  Cicciariello's requirement lie to Gounden was for the purpose of preventing Gounden from demonstrating that Map No. 1 is a fake, which makes it harder to certify illegal disappearance of Broadway being completely contained in lots other than 162, the illegal disappearance of which made the illegal appearance of Broadway on lot 162 easier to disguise, which made it easier for Pascale to pretend that plaintiff blocked a public street in lot 162.

[88]  Map # 1 has been faked to make an easement by necessity appear necessary when in fact the legal and deeded boardwalk in/egress has been fenced over by Christopher Jones, the man who stole Broadway, as indicated by a certified copy of the deed for lot 782 where the property is " Running thence in an easterly direction…to a certain *board walk*: Thence in a southerly direction along said *board walk* [20] feet…" [Reel 3707 pg 2494]

[89]  The boardwalk Broadway is visually confirmed by the pictures Sister Sonia Duthoit [28] . The boardwalk Broadway is confirmed by City surveyor Deehan's maps. The boardwalk Broadway is confirmed by a certified Belcher Hyde map of Block 14228 [29] with Broadway written onto the Belcher Hyde map by Cicciariello.

### AS AND FOR A SEVENTH CAUSE OF ACTION      7TH
### State Action for Affirmative Fraud

---

[28] Exhibit ___ Certified Queens Library Archives photo of Broadway by Sonia Duitt's looking south from 102nd Street to a clothes line in front of lot 182 and a boardwalk that runs inches from 132 Broadway in lot 782.

[29] Exhibit ___ Certified Belcher Hyde map Volume A, Plate 32, Block 14228, Lot 771 thru 776, 778, 790 thru 782, updated 1961, Published 1938

**[90]**   As and for a seventh cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including Cicciariello, for $100,000 for the fraud of preparing a false Street Report that knowingly alleged no controversy existed to the City's Title to a public street in the arrest area enabling Pascale to arrest plaintiff under the false pretense that blocking the arrest area was blocking a public street.

### AS AND FOR A EIGHTH CAUSE OF ACTION          8TH
### PUNITIVE DAMAGES:State Action for Affirmative Fraud

**[91]**   As and for a eighth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including Cicciariello, for $200,000 in punitive damages for the fraud of preparing a false Street Report that knowingly alleged no controversy existed to the City's Title to a public street as factually set out in ¶ 189.

### AS AND FOR A NINTH CAUSE OF ACTION          9TH
### Federal Action for Affirmative Fraud

**[92]**   As and for a ninth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including Cicciariello, for $100,000 in federal damages for the fraud of preparing a false Street Report that knowingly alleged no controversy existed to the City's Title to a public street as factually set out in ¶ 189.

### AS AND FOR A TENTH CAUSE OF ACTION          10TH
### Punitive Federal Action for Affirmative Fraud

[93]    As and for a tenth cause of action plaintiff reiterates all ¶¶s in full and completely

in full and completely and sues all defendants, including Cicciariello, for $200,000 in

punitive damages as factually set out in ¶ 189.

### AS AND FOR A ELEVENTH CAUSE OF ACTION          11TH
### State Action for Soliciting Fraud

[94]    As and for a eleventh cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Cicciariello, for

$100,000 for soliciting fraud from defendant Moghabhaii K. Desai by having prepared a

false Street Report for Desai to sign that knowingly alleged no controversy existed to the

City's Title to a public street in lot 162 that ultimately enabled Pascale to arrest plaintiff

under the false pretense that blocking lot 162 was blocking a public street.

### AS AND FOR A TWELFTH CAUSE OF ACTION          12TH
### PUNITIVE DAMAGES:State Action for Soliciting Fraud

[95]    As and for a twelfth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Cicciariello, for

$200,000 in punitive damages for soliciting fraud as factually set out in ¶ 193.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION          13TH
### Federal Action for Soliciting Fraud

[96]    As and for a thirteen cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Cicciariello, for

$100,000 in federal damages for soliciting fraud from defendant Moghabhaii K. Desai by

having prepared a false Street Report for Desai to sign that knowingly alleged no

controversy existed to the City's Title to a public street in lot 162 that ultimately enabled

Pascale to arrest plaintiff under the false pretense that blocking lot 162 was blocking a

public street.

<h3 style="text-align:center">AS AND FOR A FOURTEENTH CAUSE OF ACTION     14TH<br>Punitive Federal Action for Affirmative Fraud</h3>

[97]    As and for a fourteenth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Cicciariello, for

$200,000 in punitive damages for for soliciting fraud as factually set out in ¶ 195.

<h3 style="text-align:center">AS AND FOR A FIFTEENTH CAUSE OF ACTION     15TH<br>State Action for Fraud</h3>

[98]    As and for a fifteenth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Moghabhaii K.

Desai, for $100,000 for signing a document when Desai knew a controversy existed to

the City's alleged Title to a public street in lot 162 that also ultimately enabled Pascale to

arrest plaintiff under the false pretense that blocking lot 162 was blocking a public street.

<h3 style="text-align:center">AS AND FOR A SIXTEENTH CAUSE OF ACTION     16TH<br>PUNITIVE DAMAGES:State Action for Fraud</h3>

[99]    As and for a sixteenth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Moghabhaii K.

Desai, for $200,000 in punitive damages as factually set out in ¶ 197

<h3 style="text-align:center">AS AND FOR A SEVENTEENTH CAUSE OF ACTION     17TH<br>Federal Action for Fraud</h3>

[100]  As and for a seventeenth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including Moghabhaii K. Desai, for $100,000 for signing a document when Desai knew a controversy existed to the City's alleged Title to a public street in lot 162 that also ultimately enabled Pascale to arrest plaintiff under the false pretense that blocking lot 162 was blocking a public street.

### AS AND FOR A EIGHTEENTH CAUSE OF ACTION          18TH
### State Action: Failure to Supervise And Train

[101]  As and for a eighteenth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including the City of New York, for $100,000 in non-punitive damages for failing to train and supervise DOT and Topography [a]  To know that title is not necessary under General City law § 36[2] to enter onto private property and resurface land and [b] To know that there are only two kinds of unmapped streets, [b1] public ways on private property in zoning regulations and [b2] public ways on private property in deeds, neither of which existed, which legally enabled Gounden to fence-off lot 162, which would have prevented a Con Edison truck from illegally in and egressing lot 162, which would have precluded Pascale from arresting plaintiff under the pretense of blocking a public " narrow dirt thruway".

### TIMELINE

[102]  Defendant Shulman submitted the Street Report application, for title to the Law Department of the City of New York at some time between 1996 Sep 03 and 1996 Sep 17 and did not file the application for title to lot 162 with the Department of City Planning.

[103]] L.1962, ch 998 § 197-[c][11] of the Charter of the City of New York provides that "...applications by any person or agency for changes, approvals...or authorization... respecting the use...of real property...shall be reviewed pursuant to a uniform review procedure in the...categories..[of]...[c1] maps of subdivisions or plating of land into streets,...or public places pursuant to two hundred two [{a} and {b}...[c11]]... Acquisition by the city of real property...including acquisition by...{Enterprise Capacity} condemnation..."

[104] Shulman did not submit her " Opinion of Dedication " [30] plan the Department of City Planning.

## AS AND FOR A NINETEENTH CAUSE OF ACTION      19TH
### State Action: Due Process Clause - Art 1 § 6 Const.

[105] As and for a nineteenth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including Shulman, under 42 U.S.C. §§ 1983 and 1985, for $100,000 for depriving plaintiff the procedural State due process under L.1962, ch 998 §§ 197-[c11], 202[b] of the Charter of the City of New York, by having acquired title to lot 162 by an Opinion of Dedication which was directly used by the City of New York, and its agents, to prevent lot 162 from being fenced off, which created an obstacle-less path along which Pollina ingressively trespassed lot 162 and which illusion Pascale used to create the illusion that plaintiff was arrested for blocking a public street where the accusatory instrument read: " a narrow dirt thruway ".

---

[30] Exhibit 5 = 1996 Sep 17 " Opinion of Dedication " by Daniel Muller, esq Acting Corp Counsel

### AS AND FOR A TWENTIETH CAUSE OF ACTION          20TH
#### Punitive Damages:State Action: Due Process Clause - Art 1 § 6 Const.

**[106]**  As and for a twentieth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Shulman, under 42

U.S.C. §§ 1983 and 1985, for $200,000 for depriving plaintiff the procedural State due

process under L.1962, ch 998 § 197-[c11], 202[b] of the Charter of the City of New York,

as factually set out in ¶ 203.

### AS AND FOR A TWENTY FIRST CAUSE OF ACTION          21ST
#### Federal Action: Due Process Clause - 5th & 14th Amendment

**[107]**  As and for a twenty first cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Shulman, under 42

U.S.C. §§ 1983 and 1985, for $100,000 for depriving plaintiff of his procedural federal

due process entitlements under L.1962, ch 998 §§ 197-[c11], 202[b] of the Charter of the

City of New York, by having acquired title to lot 162 by an Opinion of Dedication which

was directly used by the City of New York, and its agents, to prevent lot 162 from being

fenced off, which created an obstacle-less path along which Pollina ingressively

trespassed lot 162 and which Pascale used to create the illusion that plaintiff was arrested

for blocking a public street where the accusatory instrument read: " a narrow dirt thruway

".

### AS AND FOR A TWENTY SECOND CAUSE OF ACTION          22nd
#### Federal Punitive Damages:State Action: Due Process Clause - 5th & 14th Amend

**[108]**   As and for a twenty second cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including Shulman, under 42 U.S.C. §§ 1983 and 1985, for $200,000 in punitive damages for depriving plaintiff of his procedural federal due process under L.1962, ch 998 § 197-[c11], 202[b] of the Charter of the City of New York, as factually set out in ¶ 205.

**TIMELINE**

**[109]**   After Shulman submitted the Street Report to defendant Corp Counsel Miller [31] , like Shulman, Cicciariello and Desai, by training and supervision by the City of New York, were aware or should have been aware of the controversies and contradictions regarding **[a]** the *private right of way in the* 1975 Sep 17th Indenture, **[b]** the recognition of that *private right of way* by the City of New York in the 1976 Jun 22 Indenture, **[c]** Map No. 1 of the Boathouse lots and Deehan Map No. 129/764 - 5475 - J147, [d] the Opinion of Dedication and the EDPL, the Opinion of Dedication and Canal Law 40[1], [e] the Opinion of Dedication and L.1962, ch 998 § 197-[c11], 202[b] of the City Charter, the Opinion of Dedication and General City Law § 36[2], Opinion of Dedication and the EDPL, and finally, but not limited to, the Opinion of Dedication and the owner-signature provisions for transfers of land interest in General Obligations law 5-703 subs. [1].

**[110]**   On 1996 Sep 17 defendant Daniel Muller, Acting Corporation Counsel, Chief of the Commercial and Real Estate Division, dated and returned an opinion [32] that Serio,

---

[31] Who was the knowledgable Chief of the Commercial and Real Estate Division

[32] Exhibit 5 -1996 Sep 17. Acting Corp Counsel Daniel Muller opines Charles Serio dedicated his land

still alive, in possession of lot 162 and completely unquestioned had dedicated his lot 162

to public use pursuant to General City law § 36[2] which has absolutely no acquisition

provisions whatsoever.

**AS AND FOR A TWENTY THIRD CAUSE OF ACTION**    **23rd**
**State Action: Due Process Clause - Art 1 § 6 Const.**

[111]   As and for a twenty third cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Daniel Miller under

42 U.S.C. §§ 1983 and 1985, for $100,000 for depriving plaintiff the procedural State due

process under L.1962, ch 998 §§ 197-[c11], 202[b] of the Charter of the City of New

York, by having acquired title to lot 162 by an Opinion of Dedication which was directly

used by the City of New York, and its agents, to prevent lot 162 from being fenced off,

which created an obstacle-less path along which Pollina ingressively trespassed lot 162

and which illusion Pascale used to create the illusion that plaintiff was arrested for

blocking a public street where the accusatory instrument read: " a narrow dirt thruway ".

**AS AND FOR A TWENTY FOURTH CAUSE OF ACTION**    **24th**
**Punitive Damages:State Action: Due Process Clause - Art 1 § 6 Const.**

[112]   As and for a twenty fourth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Shulman, under 42

U.S.C. §§ 1983 and 1985, for $200,000 for depriving plaintiff the procedural State due

process under L.1962, ch 998 § 197-[c11], 202[b] of the Charter of the City of New York,

as factually set out in ¶ 209.

## AS AND FOR A TWENTY FIFTH CAUSE OF ACTION     25th
### Federal Action: Due Process Clause - 5th & 14th Amendment

[113]  As and for a twenty fifth cause of action plaintiff reiterates e all ¶¶s in full and

completely in full and completely and sues all defendants, including Shulman, under 42

U.S.C. §§ 1983 and 1985, for $100,000 for depriving plaintiff of his procedural federal

due process entitlements under L.1962, ch 998 §§ 197-[c11], 202[b] of the Charter of the

City of New York, by having acquired title to lot 162 by an Opinion of Dedication which

was directly used by the City of New York, and its agents, to prevent lot 162 from being

fenced off, which created an obstacle-less path along which Pollina ingressively

trespassed lot 162 and which Pascale used to create the illusion that plaintiff was arrested

for blocking a public street where the accusatory instrument read: " a narrow dirt thruway

".

## AS AND FOR A TWENTY SIXTH CAUSE OF ACTION     26th
### Federal Punitive Damages:State Action: Due Process Clause - 5th & 14th Amend

[114]  As and for a twenty sixth cause of action plaintiff reiterates e all ¶¶s in full and

completely in full and completely and sues all defendants, including Shulman, under 42

U.S.C. §§ 1983 and 1985, for $200,000 in punitive damages for depriving plaintiff of his

procedural federal due process under L.1962, ch 998 § 197-[c11], 202[b] of the Charter

of the City of New York, as factually set out in ¶ 211.

### TIMELINE

[115]  Purportedly, on or about 1996 Oct 04, the Topographical Unit received the Opinion of Dedication as time stamped on the purported Opinion of Dedication.

[116]  Purportedly, on or about 1996 Oct 04, Cicciariello claims he filed the Opinion of Dedication but did not index or draw the Opinion of Dedication on the Queens Street Index map.

[116]  Before 2001 Sep 28, while Cicciariello was working in the Topographical Unit, Harry F. Fox had the Stewart Title Ins. Company conduct a title search [33] for a closing on Serio's sale of lot 162 to Harry Fox. Cicciariello found no " Opinion of Dedication " in any folder in which Cicciariello allegedly placed defendant Muller's 1996 Opinion of Dedication. Fox and Serio closed on the sale by Indenture made 2001 Sep 28.

[117]  The 1975 Sep 22 Indenture, demonstrating lot 162 to be a private right of way and the 1976 Indenture recognizing the private right of way in the 1975 Sep 22 Indenture were preceded by title insurance searches that revealed no Opinion of Dedication.

[118]  On 2004 Dec 20 the present and Official Alteration Topographical Unit Map No. 4979 [34] was signed by Clara C. Viuker, Acting Engineer In Charge Topographical Bureau Borough of Queens and signed by Thomas Campagna, P.E., Consulting Engineer Borough of Queens and signed by Helen C. Marshall, President Borough of Queens and the Board of Estimate.

---

[33] Exhibit 15 - Title search result for lot 162 by Stewart Title Insurance Company

[34] Exhibit 16 - Official Topo Unit Alteration Map 4979

[119]  Map 4979 shows no Black lines [Streets established and retained], Red lines [Streets established and removed ] or Street lines ever having existed at all in the entirety of and in the entirety of the history of Block 14228.

[120]  The previous Official 1953 Nov 19 Alteration Topographical Unit Map 3651 [35] also showed no Black, Red or Street lines ever having existed at all in the entirety of and in the entirety of the history of Block 14228.

[121]  When, during Cicciariello's heading of the House Numbers Division of the Topographical Unit, title searches were conducted for the officially certified Topo Unit Map 4979, Cicciariello found no " Opinion of Dedication " in any folder in which Cicciariello allegedly placed defendant Muller's 1996 Opinion of Dedication.

[122]  Before 2006 Jul 01, when Fox and Gounden closed on the sale of lot 162 to Gounden, title searches were conducted by Capital Land Services [36] and Professional Land Surveyors, Inc. [37]. Cicciariello found no Opinion of Dedication in any folder in which Cicciariello allegedly placed defendant Muller's 1996 Opinion of Dedication.

[123]  On or about November of 2007 Gounden had a meeting with Queens Borough President Helen Marshal concerning payment to Gounden for the confiscation of part of lot 162.

---

[35] Exhibit 17 - Official Topo Unit Alteration Map 3651

[36] Exhibit 15 - Title search result for lot 162 by Title agent Capital Land Services

[37] Exhibit 15 - Title search result for lot 162 by Professional Land Surveyors, Inc.

[124]  Cicciariello conducted a search and put together a packet for the Queens Borough President and her counsel to review before the meeting. Cicciariello found no Opinion of Dedication in any folder in which Cicciariello allegedly placed defendant Muller's 1996 Opinion of Dedication.

[125]  At the meeting, based on Cicciariello's packet, defendant Campagna admitted that Gounden owned the land without any encumbrance and defendant Marshal ordered defendant McMillan to cause Gounden to be paid for the illegal confiscation of Gounden's property.

[126]  After at least six title searches and folder reviews, Cicciariello found no Opinion of Dedication in any folder in which Cicciariello allegedly placed defendant Muller's 1996 Opinion of Dedication because defendant Muller's alleged " Opinion of Dedication " did not exist before Gounden's meeting with Queens Borough President Marshal's meeting with Kris Gounden in the fall of 2007.

[127]  Cicciariello concocted, constructed and falsified a false Opinion of Dedication that he later presented in *Gounden vs City of New York,* 10 cv 3438, EDNY.

[128]  Defendant McMillan then and thereafter the meeting continuously refused to manifest defendant Marshal's Order to McMillan to manifest payment to Gounden. And for years Gounden called but could not effect another meeting or audience with defendant Marshal on the payment she Ordered. Marshal did not pursue to see that her Order had been satisfied and purposefully avoided Gounden.

### AS AND FOR A TWENTY SEVENTH CAUSE OF ACTION          27th

**State Action: Fraud and Fabrication of Documents**

[129]  As and for a twenty seventh cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Cicciariello, under

42 U.S.C. §§ 1983 and 1985, for $100,000 in compensatory damages for, if not for gross

negligence in not finding, a fraudulent Opinion of Dedication that was wholly fabricated,

concocted, invented and illusory that was used as a justification to use police to prevent

Gounden from erecting a fence around the entire permitter of lot 162, which left a part of

lot 162 open which defendant Pascale knowingly and calculatedly used to subscribe to

the illusion that " a narrow dirt thruway " was a public street and thereby falsely arrest

plaintiff.

### AS AND FOR A TWENTY-EIGHTH CAUSE OF ACTION          28th
#### Punitive Damage : Fraud and Fabrication of Documents

[130]  As and for a twenty-eighth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Cicciariello, under

42 U.S.C. §§ 1983 and 1985, for $400,000 in compensatory damages as factually set out

in ¶ 228.

### AS AND FOR A TWENTY NINTH CAUSE OF ACTION          29th
#### Federal Action: Fraud and Fabrication of Documents

[131]  As and for a twenty-ninth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Cicciariello, under

42 U.S.C. §§ 1983 and 1985, for $100,000 in compensatory damages for, if not for gross

negligence in not finding, a fraudulent Opinion of Dedication that was wholly willfully

fabricated, concocted, invented and illusory and was consciously used as a justification to

use police to prevent Gounden from erecting a fence around the entire permitter of lot

162, which left a part of lot 162 open all of which defendant Pascale knowingly and

calculatedly used to subscribe to the illusion that " a narrow dirt thruway " was a public

street and thereby falsely arrest plaintiff for engaging in his 5th Amendment entitlement

to guard Gounden's property from trespass.

### AS AND FOR A THIRTIETH CAUSE OF ACTION          30th
### Punitive Federal Damage : Fraud and Fabrication of Documents

[132]  As and for a thirtieth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Cicciariello, under

42 U.S.C. §§ 1983 and 1985, for $400,000 in punitive damages as factually set out in ¶

230.

### AS AND FOR A THIRTY FIRST CAUSE OF ACTION          31st
### State Action: Procedural Due Process

[133]  As and for a thirty first cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including McMillan, under 42

U.S.C. §§ 1983 and 1985, for $100,000 in compensatory damages for not manifesting

payment to Gounden, based on an Opinion of Dedication that was not part of the packet,

which would have acknowledged Gounden's entitlement to erect a fence around the

entire permitter of lot 162, which would closed lot 162 to exposure to trespass, which

defendant Pascale knowingly and calculatedly seized upon to subscribe to the illusion

that " a narrow dirt thruway " was a public street and thereby falsely arrest plaintiff for

blocking a public street.

### AS AND FOR A THIRTY SECOND CAUSE OF ACTION     32nd
### Punitive Damage : Fraud and Fabrication of Documents

[134] As and for a thirty fourth cause of action plaintiff reiterates all ¶¶s in full and

completely and completely and sues all defendants, including McMillan, under 42 U.S.C.

§§ 1983 and 1985, for $200,000 in punitive damages as factually set out in ¶ 232.

### AS AND FOR A THIRTY THIRD CAUSE OF ACTION     33rd
### Federal Action: Fraud and Fabrication of Documents

[135] As and for a thirty third cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including McMillan, under 42

U.S.C. §§ 1983 and 1985, for $100,000 in compensatory damages for not manifesting

payment to Gounden, based on an Opinion of Dedication that was not part of the packet,

which would have acknowledged Gounden's entitlement to erect a fence around the

entire permitter of lot 162, which would closed lot 162 to exposure to trespass, which

defendant Pascale knowingly and calculatedly seized upon to subscribe to the illusion

that " a narrow dirt thruway " was a public street and thereby falsely arrest plaintiff for

blocking a public street.

### AS AND FOR A THIRTY FOURTH CAUSE OF ACTION     34th
### Punitive Federal Damage : Fraud and Fabrication of Documents

**[136]**  As and for a thirty fourth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including McMillan, under 42 U.S.C. §§ 1983 and 1985, for $200,000 in punitive damages as factually set out in ¶ 234.

### AS AND FOR A THIRTY FIFTH CAUSE OF ACTION            35th
### Failure to Supervise

**[137]**  As and for a thirty fifth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including Marshal, under 42 U.S.C. §§ 1983 and 1985, for $100,000 in compensatory damages for failing to supervise counsel McMillan and for purposefully avoiding Gounden in order not to pay Gounden which would have made the disputed part of lot 162 a public street, which would have prevented plaintiff from guarding Gounden's property on the narrow dirt thruway, which would have prevented Pascale from falsely arresting plaintiff for blocking a public street.

### AS AND FOR A THIRTY SIXTH CAUSE OF ACTION            36th
### Punitive Damages for Failure to Supervise

**[138]**  As and for a thirty sixth cause of action plaintiff reiterates all ¶¶s in full and completely in full and completely and sues all defendants, including Marshal, under 42 U.S.C. §§ 1983 and 1985, for $200,000 in punitive damages as factually set out in ¶ 236.

### TIMELINE

**[139]**  Between 2006 and the present, Gounden had numerous contacts with police, fire and other officials challenging his placement of either fences, boulders or cars that blocked or were intended to block vehicular trespass on lot 162.

[140]  The purpose of each and every government contact was to physically intimidate plaintiff with arrest, injury or deadly force into permitting permanent vehicular trespass on lot 162.

[141]  On 2010 Jul 27 Gounden filed suit, Index No. 10 cv 3438, EDNY, against the City of New York alleging a Federal Eminent Domain violation for removing a boulder from and thereby re-controlling and re-opening a road on Gounden's private property at lot 162 in Block 14228 in Queens, New York.

[142]  In *Gounden v City,* defendant Vidal asserted that: "…pursuant to Section 189 of the New York State Highway Law, private property becomes burdened with a public easement and, thereby becomes a " highway, " if for ten or more years: [1] the public has used the land as public roadway; and [2] the municipality has maintained the land as a public roadway. " [38]

[143]  At the time Vidal advanced the Section 189 theory in *Gounden v City*, Vidal was aware that § 189 read in part: "…the *town superintendent* shall open all such highways…." [39]

[144]  At the time Vidal advanced the Section 189 theory in *Gounden v City*, Vidal was aware or should have been aware by training and by the supervision of the Chief of the Commercial and Real Estate Division of the Law Department and the City of New York, that:

---

[38] memorandum of law, 10 cv 3438, EDNY, Doc # 15, pg 8

[39] memorandum of law, 10 cv 3438, EDNY, Doc # 15, pg 10

[a] A Town Superintendent of Highways is only authorized to open § 189 Highways pursuant to § 173 of the Highway law which requires the Town Superintendent, when no dedication or purchase occurs, to apply to the Town Board for permission to institute a proceeding to acquire the land and then only by application pursuant to the *eminent domain procedure law.*

[b] Article 3 § 20[1][a] of the Town law identifies the Office of Town Superintendent of Highways, Town Supervisor and Town Councilmen as elected offices.

[c] Article 3 § 32 of the Town law generally specifies the powers and duties of an elected Town Superintendent of Highways to be imposed by law or by the Town Board if not inconsistent with law.

[d]    There is no law that imposes the powers and duties of an elected Town Superintendent of Highways on either the City of New York or Vidal.

[e] Article 3 § 60 of the Town law generally specifies the constitution of a Town Board as the Town Supervisor and the Town Councilmen.

[f] The Charter of the City of New York, and by implication the State of New York, does not authorize the elected office/s of either Town Superintendent of Highways, Town Supervisor, Town Councilmen or Town Board.

[g] The Charter of the City of New York does not contain the word " Town ".

[h] § 197-a of the City Charter requires " Plans for the development…of the city…by…a borough president…shall submit the plan….to the city planning commission…"

**[145]** In instituting the affirmative § 189 defense in *Gounden v City of New York,* 10 cv 3438, defendant Vidal, employed by the City of New York, using letterheads of the City of New York, represented the Town Superintendent of Highways of the City of New York and in effect represented no client at all because there is no Town Superintendent of Highways of the City of New York.

**[146]** In instituting the affirmative § 189 defense in *Gounden v City of New York,* 10 cv 3438, defendant Vidal masqueraded himself as the Town Superintendent of Highways of the City of New York.

**[147]** In instituting the affirmative § 189 defense in *Gounden v City of New York,* 10 cv 3438, defendant Vidal bogusly exercised the authority of a Town Superintendent of Highways of the City of New York and pretensively exercised the exclusive original authority of the City Planning Commission to accept applications for streets under the pretense of exercising the authority of the City of New York.

**[148]** The felony charging without a misdemeanor and failure of Michael Hussey's prosecution to be vigorous ;; The 1998 Black to the Future parade float in next community Broad Channel where, as a joke, a dummy was dragged in effigy by City workers, police and firemen mocking the 1998 Jasper, Texas hate crime dragging death of James Byrd, Jr., a black man of African descent ;; the verbally racial assaults Gounden's dark skinned son suffered at school and the teacher's inadequate response that the son should just call them " white" ;; the failure of police to find a Gounden's FOILed sprint report charging assault by Scott Statland even though Gounden reported the time, date,

phone number and a picture of the police van and its license plate 3370 from the 106th

precinct ;; the Housing Court trial of Gounden who was dubbed a slumlord in the Daily

News even though the plaintiff admitted she had not called Gounden and although she

addressed the summons and complaint to the wrong zip code and a traverse hearing was

denied, even though the building had a receiver on it ;; the same Housing Court's two

orders civilly incarcerating Gounden one of which directed an indeterminate period while

the second Order directed no more than 30 days ;; numerous criminal court appearances

where Gounden was repeatedly called dead last on the calendar ;; a criminal court

appearance where Gounden's own lawyer allowed the ADA to question Gounden's

witness in a hallway without observing in the Statland assault case ;; numerous criminal

court appearances where Gounden's attorneys refused to represent vigorously ;; the City,

in *Gounden v City,* using an affidavit from Charles Jones, a City worker, whose lot 782

deed shows the boardwalk Broadway as Jones' eastern border yet Jones has been

permitted to extend and fence in land east of the real Broadway boardwalk which is City

owned ;; and even now Reibman and Weiner [Gounden's former attorney in *Gounden v

City of New York,* 10 cv 3438 ] has " lost " the depositions of DiVerniero and Cicciariello

as well as Gounden's transcribed meeting with Marshal ;; plaintiff's own experience

hearing loud " monkey sounds " in a house as plaintiff and Gounden walked on Bayview

north of Gounden's properties and numerous other instances all evidence a government/

HPD/Police/Fire/Sanitation/Dept. of Buildings/State DEC/Public Utility/larger

community conspiracy against Gounden, based in large part on race and supported, by

unsupported complaints to said agencies, by racist elements in the larger community in an

effort to drive Gounden out of the neighborhood which neatly extended to plaintiff, as a

male black of African descent, who was arrested in support of the conspiracy as a direct

result of Pascale's exercise of arrest authority under the pretense of the alleged blocking

of a public street, namely, Broadway.

**AS AND FOR A THIRTY SEVENTH CAUSE OF ACTION        37th**
**Civil Rights Law Art 2 § 2 ;**

[149]  As and for a thirty seventh cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Vidal, for State and

Federal damages, under 42 U.S.C. §§ 1983 and 1985, for $100,000 in compensatory

damages, for each exercise of authority under a pretense, for furthering Bocchiochio's

and Addabbo's independently original fraudulent attempts to establish a street on lot 162

by, separately in both *Gounden v City of New York* and in *City of New York v Gounden,*

exercising the authority of **[a] a** Town Superintendent of the City of New York, and

another $100,000 for each exercise of the authority of **[b] a** Town Supervisor of the City

of New York, and another $200,00 for each exercise of the authority of **[c]** two Town

Council Members of the City of New York, and another $100,000 for exercising the

authority of **[d]** a Town Board of the City of New York, and another $100,000 for

exercising **[e]** the original and exclusive authority of the Department of City Planning to

accept site plan applications for the acquisition of private property for use as a public

street all under the pretense of exercising the authority of the Law Department of the City

of New York, all of which ultimately led to and continued Bocchiochio's and Addabbo's

illusionary fabrications of a public street on lot 162, which culminated in Pascale

arresting plaintiff as if plaintiff was on and had blocked a public street.

### AS AND FOR A THIRTY EIGHTH CAUSE OF ACTION        38th
### Punitive Damages : Civil Rights Law Art 2 § 2

[150]  As and for a thirty eighth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Vidal, under 42

U.S.C. §§ 1983 and 1985, for punitive damages for State and Federal violations as

factually set out in ¶ 248.

### AS AND FOR A THIRTY NINTH CAUSE OF ACTION        39th
### State Action: Failing to Supervise

[151]  As and for a thirty ninth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including the City of New

York, under 42 U.S.C. §§ 1983 and 1985, for $100,000 in compensatory damages for

failing to properly supervise Vidal as Vidal furthered Bocchiochio's and Addabblo's

original fraudulent attempts to establish a street on lot 162 as described in the paragraph

immediately above the immediate paragraph above.

### TIMELINE

[152]  Vidal solicited perjury from defendant DiVerniero. Vidal called DiVerniero to

falsely testify and DiVerniero did falsely testify, on 2011 Mar 22, that a public street of

unknown and inspecific width, origin and length was indicated contrary to L.1962, ch

998 § 202[b] and a lack of FITS and Mosaic confirmation and specifications.

[153]  Vidal solicited perjury from DiVerniero who did falsely testify, on 2011 Mar 22, to

the alleged public street, Broadway as being on lot 162 [40] contrary to the public street

sign Broadway perfectly aligned with light poles that are perfectly in line with the 5 foot

wide boardwalk Broadway [41] .

[154]  Before Vidal called DiVerniero to the stand on 2011 Mar 22, Vidal knew that the

public street sign " Church, Broadway, Bayview " is not and has never been on any

official Alteration or Final Map of the City of New York.  [42]

[155]  At the hearing, dated 2011 Mar 22, Index No. 10 cv 3438, appearances were made

by defendant Vidal and Corporation Counsel Senior Commercial and Real Estate

Litigation Division Counsel Warren Shaw.

[156]  Before Vidal called Cicciariello to testify on 2011 Mar 22, Vidal was aware from

Cicciariello's deposition that Cicciariello had falsely testified to part of lot 162 having a

public nature.

**AS AND FOR A FORTIETH CAUSE OF ACTION**          **40th**
**State Action for soliciting perjury of DiVerniero**

---

[40] Exhibit 2 - pg 204, lines 6 - 7

[41] Exhibit ___ Sonia Duitt's Broadway photo looking south from 102nd Street

[42] Vidal is a knowledgeable member of the Commercial and Real Estate Division of the City Law Department

[157]  As and for a fortieth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Vidal, under 42

U.S.C. §§ 1983, 1985, for $100,000 for  soliciting, on 2011 Mar 22, the perjury of

Michael Diverniero for the illegitimate purpose of legitimizing the unconstitutional "

Opinion of Dedication " title transfer program [43] and the City's unconstitutional lack of

procedural due process application of the Opinion of Dedication to lawlessly, but falsely,

exert a legal interest in lot 162 which directly and materially led to Gounden's inability to

fence-off lot 162, which directly and materially led to the un-blocked condition of lot

162, which was knowingly, conceptually and falsely seized upon by defendant Pascale in

falsely portraying lot 162 as having been a public street with the use of the phrase "

narrow dirt thruway " in the accusatory instrument that was collectively used by all

defendants to justify Pascale's arrest plaintiff.

### AS AND FOR A FORTY FIRST CAUSE OF ACTION          41st
#### Punitive Damages State Action for soliciting perjury of DiVerniero

[158]  As and for a forty first cause of action plaintiff reiterates all paragraphs in full and

completely and sues all defendants, including Vidal, under 42 U.S.C. §§ 1983, 1985, in

punitive damages for $200,000 as factually set out in ¶ 256.

### AS AND FOR A FORTY SECOND CAUSE OF ACTION          42nd
#### State Action for soliciting perjury of Cicciariello

[159] As and for a forty second of action plaintiff reiterates all ¶¶s in full and completely

in full and completely and sues all defendants, including Vidal, under 42 U.S.C. §§ 1983,

---

[43] ¶¶ 53 - 57.2, Amended Complaint

1985, for $100,000 for  soliciting, on 2011 Mar 22, the perjury of Cicciariello [44]

regarding testimony that falsely portrayed a public street in Block 162 which directly and

materially led to Gounden's inability to fence-off lot 162, which directly and materially

led to the un-blocked condition of lot 162, which was knowingly, conceptually and

falsely seized upon by defendant Pascale in falsely portraying lot 162 as having been a

public street with the use of the phrase " narrow dirt thruway " in the accusatory

instrument that was collectively used by all defendants to justify Pascale's arrest plaintiff.

### AS AND FOR A FORTY THIRD CAUSE OF ACTION          43rd
### Punitive Damages State Action for soliciting perjury of Cicciariello

[160]  As and for a forty third cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Vidal, under 42

U.S.C. §§ 1983, 1985, in punitive damages for $200,000 for soliciting the perjury of

Cicciariello as set out ¶ 260.

### AS AND FOR A FORTY FORTH CAUSE OF ACTION          44th
### Declaratory Judgment: § 189 of the Highway Law Violates the Takings Clause
### of the Fifth Amendment

[161]  As and for a forty forth cause of action plaintiff reiterates all ¶¶s in full and

completely and sues all defendants, including Vidal and the City of New York, separately

and collectively, under 42 U.S.C.§§ 1983, 1985, for a Declaratory Judgment that § 189 of

---

[44] ¶¶ 62 - 69

the Highway law's lack of payment provisions for the Enterprise Capacity opening of a

road on private property violates the Takings Clause of the Fifth Amendment [45]

Regarding the New York Legislature's intent to deprive the Courts of New York of

all competence the U.S. Supreme Court's finding in *Rizzo v. Goode* applies snugly:

"It is abundantly clear that one reason the legislation was passed was to afford a [direct]

federal right in federal courts because, by reason of prejudice, passion, neglect,

intolerance or otherwise, state laws might not be enforced and the claims of citizens to

the enjoyment of rights, privileges, and immunities guaranteed by [ any ] Amendment

might be denied by state agencies." Id., at 180. (Emphasis added.) [see *Rizzo v. Goode,*

432 US 362, 384-85 [1976]]

### AS AND FOR A FORTY FIFTH CAUSE OF ACTION     **45th**
**Declaratory Judgment:**
**§ 189 of the Highway Law Violates the Notice and Opportunity**
**Provisions of the Procedural Due Process Clause**
**of the Fifth Amendment**

[162]  As and for a forty fifth cause of action plaintiff reiterates all ¶¶s in full and

completely in full and completely and sues all defendants, including Vidal, the City of

New York and Pascale, separately and collectively, under 42 U.S.C.§§ 1983, 1985, for a

---

[45] Exhibit 2 - Document 85, Trans., 10 cv 3438, EDNY, 2011 Mar 22, pg 245, Lines 16 - 17

Declaratory Judgment that § 189 of the Highway law's lack of notice and hearing

provisions violates the Procedural Due Process Clause of the Fifth Amendment [46]

### AS AND FOR A FORTY SIXTH CAUSE OF ACTION          46th
### Declaratory Judgment:
### The Failure of a New York State Local Government To Comply With EDPL § 208, et. seq., Denies the Courts Of The State of New York Competence To Adjudicate Enterprise Capacity Road Opening Acquisitions on Private Property

[163]  As and for a forty sixth cause of action plaintiff reiterates all ¶¶s in full and

completely and sues all defendants separately and collectively, for a Declaratory

Judgment that a Local Criminal Court is without competence to adjudicate the "

otherwise privileged " element of unlawful imprisonment that requires hearing a disputed

local government acquisition of private property that could have been determined in a

proceeding under Article 2 of the EDPL in order to determine if a land owner had a

Fourth Amendment right to prevent trespass onto the land owner's private property.

### AS AND FOR A FORTY SEVENTH CAUSE OF ACTION          47th
### Declaratory Judgment:
### General City Law 36[2] Violates the Notice and Opportunity
### Provisions of the Federal Procedural Due Process Clause

[164]  As and for a forty seventh cause of action plaintiff reiterates all ¶¶s in full and

completely and sues all defendants, including Cicciariello, Moghabhai, Shulman, Muller,

Marshal, Vidal and the City of New York, separately and collectively, under 42 U.S.C. §§

---

[46] § 189 of the Highway Law reads: All lands which shall have been used by the public as a highway for the period of ten years or more shall be a highway, with the same force and effect as if it had been duly laid out and recorded as highway, and the town superintendent shall open all such highways to the width of at least three rods.

1983, 1985 for a Declaratory Judgment that General City Law 36[2] violates the notice

and hearing opportunity Clauses of the 5th Amendment since Gen Law § 36[2] authorizes

a government intrusion [ a Fourth Amendment violation unless upon reasonable cause to

protect public or private safety or upon suspect of injury, crime or Court Order ] on

private property without notice or an opportunity to be heard in that § 36[2], in relevant

part, reads: " No public municipal street utility or improvement shall be constructed by

any city…in any street or highway until it has become a public street or highway and it is

duly placed on the official map or plan, with the exception that a city may construct

improvements and provide services to any public way [mapped or unmapped] if the

public way has been open and in use to the public for a minimum of ten years. "

### AS AND FOR A FORTY EIGHTH CAUSE OF ACTION          48th
### Declaratory Judgment:
### General City Law 36[2] Violates the Just Compensation
### Provisions of the Fifth Amendment

[165]  As and for a forty eighth cause of action plaintiff reiterates all ¶¶s in full and

completely and sues all defendants for a Declaratory Judgment that Gen City Law § 36[2]

violates the Just Compensation provisions of the 5th Amendment in that under § 36[2] the

construction of street utilities or street improvements constitutes a permanent seizure of

private property without Just Compensation.

### AS AND FOR A FORTY NINTH CAUSE OF ACTION          49th
### Declaratory Judgment:
### An Opinion Of Dedication Without An Attempt To Notice And Give Opportunity To
### The Living Owner of Record Violates The Notice and
### Opportunity Provisions Of The Fifth Amendment

[166]    As and for a forth ninth cause of action plaintiff reiterates all paragraphs in

full and completely and sues, pursuant to 42 U.S.C. §§ 1983, 1985, all defendants for said

Declaratory Judgment in that DiVerniero testified to having executed 50 or more

affidavits in support of Opinions of Dedication declaring public streets without extending

notice or opportunity to comment to the living owner and in that Dara Goldberg, Special

Assistant to the Chairman of the City Planning Commission, attested, on 2016 Jan 22,

that the Queens Borough President's Topographical Office land practice..."

Usually....would indicate the CCO dedicated area on an Index Map..." [47] and in that said

Opinions of Dedications are never filed to the City Planning Commission as § 197-c of

the City Charter requires and basically in that the Queens Borough President's, Law

Department's and DOT's common CCO practice endorses Enterprise Capacity takings

without payment, without notice and without opportunity to be heard or considered by the

tax record owner or prospective buyer or designated seller.

**AS AND FOR A FIFTIETH CAUSE OF ACTION        50th**
**Declaratory Judgment:**
**No Prescriptive Easement Lies Where Common In and Egress Necessarily Exists**

[167]    As and for a fiftieth cause of action plaintiff reiterates all paragraphs in full

and completely and sues all defendants, pursuant to 42 U.S.C. §§ 1983, 1985, including

Addabbo, Campagna, Vidal, City of New York for the Declaratory Judgment that a

---

[47] Exhibit 20    2016 Jan 22 City Planning Commission letter acknowledging the Queens Borough Office
practice of obtaining Law Department CCO's as transfers of title to private property

prescriptive easement does not lie where the owner necessarily uses an ingress/egress area in common with non-owners.

### AS AND FOR A FIFTY FIRST CAUSE OF ACTION     51st
### Declaratory Cause of Action
### General Obligations Law § 5-703 Subdivision [1]

[168] As and for a fifty first cause of action plaintiff reiterates all paragraphs in full and completely and sues each and all defendants [48] separately and collectively, under 42 §§ 1983, 1985, for $100,000 each in state damages and for $100,000 each for associated federal damages for their calculatedly respective roles in creating [while the land owner was living], authorizing [while the land owner was living] and utilizing and enforcing an opinion that an unknown land owner dedicated his or her land to the City for public travel use without compliance with the owner-subscription requirements of General Obligations Law 5-703 Subd. [1], which resulted in the illegally protected trespass of lot 162, upon which Pascale seized plaintiff as if there were no trespass to private property.

### AS AND FOR A FIFTY SECOND CAUSE OF ACTION     52nd
### Cause of Action
### Punitive Damages: General Obligations Law § 5-703 Subdivision

---

[48] NYC is sued in that DiVerniero's under oath testimony, dated 2011 Mar 22, Doc. # 85, Transcript 10 cv 3438 EDNY, of more than 50 affidavits for Opinions of Dedications thru high level interagency cooperation necessarily violated Gen Oblg Law § 5-703 fifty or more times

[169]  As and for a fifty second cause of action plaintiff reiterates all ¶¶s in full and completely and sues each and all defendants [49] separately and collectively, under 42 §§ 1983, 1985, for $100,000 each in punitive state damages and for $100,000 as set out in ¶¶

## AS AND FOR A FIFTY THIRD CAUSE OF ACTION          53rd
### Cause of Action
### General City Law § 36[2]

[170]  As and for a fifty third cause of action plaintiff reiterates all ¶¶s in full and completely full and completely and sues all defendants separately and collectively, under 42 §§ 1983, 1985, for $100,000 each state damages and for $100,000 in federal damages for their respective integrated roles in creating [while the land owner was living and available], authorizing [while the land owner was living and available] and utilizing a City Law Department Opinion that an unknown land owner allegedly dedicated, in his unknown way, at some unknown time, his or her land to the City for public travel use pursuant to a law that has no acquisition provisions in it, which, in part, also resulted in the daily and illegally protected trespass of lot 162, upon which Pascale seized plaintiff as if an owner, or his agent, is not privileged from arrest for blocking off his property to prevent trespassers on other people's properties from trespassing onto the owner's property.

## AS AND FOR A FIFTY FOURTH CAUSE OF ACTION          54th
### Cause of Action
### Punitive Damages General City Law § 36[2]

---

[49] NYC is sued in that DiVerniero's under oath testimony, dated 2011 Mar 22, Doc. # 85, Transcript 10 cv 3438 EDNY, of more than 50 affidavits for Opinions of Dedications thru high level interagency cooperation necessarily violated Gen Oblg Law § 5-703 fifty or more times

[171]  As and for a fifty fourth cause of action plaintiff reiterates all paragraphs in full

and completely and sues all defendants separately, collectively under 42 §§ 1983, 1985,

for $200,000 in punitive state damages and for $ 200,000 in punitive federal damages for

their respective integrated roles in creating [while the land owner was living and

available], authorizing [while the land owner was living and available] and utilizing a

City Law Department Opinion that an unknown land owner dedicated, in some unknown

way, at some unknown time, his or her land to the City for public travel use pursuant to a

law that has no acquisition provisions in it, which, in part, also resulted in the illegally

protected trespass of lot 162, upon which Pascale seized plaintiff as if an owner, or his

agent, is not privileged from arrest for blocking off his property to prevent trespassers on

other people's properties from trespassing onto the owner's property.

## AS AND FOR A FIFTY FIFTH CAUSE OF ACTION          55th
### Canal Law  § 40[1]

[172]  As and for a fifty fifth cause of action plaintiff reiterates all paragraphs in full and

completely and sues all defendants separately and collectively under 42 §§ 1983, 1985,

for $100,000 in state damages and for $100,000 in federal damages for their separately

respective and collectively integrated roles, for each State and Federal violation:

 in that Cicciariello soliciting a violation of Canal Law § 40[1] in the Street Report, and

in Muller's issuing a title-transferring Opinion of Dedication in violation of Canal Law §

40[1]; and in Vidal, in his illusory Town Superintendent, etc. capacity, applying and

representing the title-transferring Opinion as valid while in violation of Canal Law §

40[1], and in the City of New York failing to train and supervise them all in their respective roles which, all told, resulted in a pervasive atmosphere consisting of a tolerated and illegally protected trespass of lot 162, upon and in which atmosphere Pascale seized plaintiff as if no law had been broken in the creation of a " public street " on the private lot of 162.

**AS AND FOR A FIFTY SIXTH CAUSE OF ACTION**     **56th**
**Canal Law § 40[1]**
**Punitive Damages**

[173] As and for a fifty sixth cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants, separately and collectively in punitive damages under 42 §§ 1983, 1985, for $300,000 in punitive state damages and each for for $300,000 in punitive federal damages for their respective and integrated roles regarding Canal Law § 40[1] as described in the paragraph 275 immediately above, .

**AS AND FOR A FIFTY SEVENTH CAUSE OF ACTION**     **57TH**
**General City Law § 29**
**Public Hearing**

[174] As and for a fifty seventh cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants, separately and collectively for $100,000 in compensatory state damages and for $100,000 in compensatory federal damages for violating General City Law § 29 in that " ...the approval of the layout [or] widening of streets.... shall be subject to all provisions of ....*At least 5 days notice of a public*

*hearing*...sent by registered mail, return receipt requested, to the person and address noted on the last preceding real property tax notice issued on the property..."

### AS AND FOR A FIFTY EIGHTH CAUSE OF ACTION        58TH
### General City Law § 29
### Punitive Public Hearing

[175]  As and for a fifty eighth cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants, separately and collectively for $350,000 in punitive state damages and for $350,000 in punitive federal damages for violating General City Law § 29 as set out in ¶ 277.

### AS AND FOR A FIFTY NINTH CAUSE OF ACTION        59th
### General City Law § 29
### Referral To The Planning Board

[176]  As and for fifty ninth cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants, separately and collectively for $100,000 each and all in compensatory city, state and federal damages for $100,000 for violating General City Law § 29 in that " ...matter shall be referred to the planning board..." but was not referred to the planning board.

### AS AND FOR A SIXTIETH CAUSE OF ACTION        60th
### General City Law § 29
### Punitive Referral To The Planning Board

[177]  As and for a sixtieth cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants, separately and collectively for $350,000 in punitive

city, state and federal damages in punitive federal damages for violating General City

Law § 29 as set out in the ¶ immediately above.

### AS AND FOR A SIXTY FIRST CAUSE OF ACTION        61st
### General City Law § 27-a[2]

[178]  As and for a sixty first cause of action plaintiff reiterates all paragraphs in full and

completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and

collectively for $100,000 in compensatory city, state and federal damages for violating

General City Law § 27-a[2] in that all defendants separately and collectively submitted

an inadequate site plan without Gen City Law § 27-a[2] authorization, contributed to the

inadequate submission of an inadequate site plan without Gen City Law § 27-a[2]

authorization or enforced an inadequate site plan without express authorized Department

of City Planning approval since the unauthorized site plan did not, with metes and

bounds, contain a rendering, drawing, or sketch prepared to specifications and containing

the necessary elements, as set forth in the applicable ordinance or local law showing the

arrangement, layout and design of the proposed use of a parcel of land as shown on said

plan, with the applicable ordinance or local law governing site-plan submissions being §§

197-a[a], 197-a[b], 197-a[c], 197-a[d], 197-b[a], 197-b[b], 197-c[a][1], 197-c[a][5],  197-

c[a][10], 197-c[a][11], 197-c[b][1], 197-c[b][3], 197-c[b][4], 197-c[c], 197-c[e][i], 218,

219, 222 and 223 of the City Charter.

The applicable ordinances or local laws governing the arrangement, layout and

design of the proposed use of a parcel of land also includes [a] Title 3, Chapter 5, §

3-503 of New York City Administrative Code, [b] Title 3, Chapter 3 § 3-506 of the New

York City Administrative Code and [c] Title 5, Chap 3, Sub Chap 1, section 5-308 of the

Administrative Code of the City of New York in that the site-plan submissions violations

of General City Law § 27-a[2] enabled the illusion of authority by which lot 162 was

forcibly kept open from on or about August of the year 2006 until and beyond the filing

of the City's Memorandum of Law in Opposition to Plaintiff's motion for Preliminary

Injunction. [50]

### AS AND FOR A SIXTY SECOND CAUSE OF ACTION          62nd
### Punitive Damages General City Law § 27-a[2]

**[179]**  As and for a sixty second cause of action plaintiff reiterates all paragraphs in full

and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately

and collectively for $300,000 in punitive state damages and for $300,000 in punitive

federal damages for violating General City Law § 27-a[2] as set out in ¶ 278 immediately

above.

### AS AND FOR A SIXTY THIRD CAUSE OF ACTION           63rd
### General City Law § 27-a[8] Hearing Requirement

**[180]**  As and for sixty third cause of action plaintiff reiterates all ¶¶s in full and

completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and

collectively for city, state and federal compensatory damages for $ 300, 000 in that

General City Law § 27-a[8] stands violated by the failure of  Shulman, Muller, Vidal,

Law Department, Marshal and Katz to cause or hold the public hearing required by §§

---

[50] *Gounden v City of New York,* doc # 15, pg 10, filed 2010 Aug 16, 10 cv 3438, EDNY

197-a[c] and 197-a[d][2]] of the City Charter and to cause or hold the public hearing required by the EDPL in that the failure to cause or hold said public hearing met the mind of Addabbo in keeping the area of arrest open illegally, upon which Pascale seized in ordering plaintiff's arrest and with plaintiff being charged with, inter alia, Unlawful Imprisonment, under the pretense of the arrest area having had a public character and under the pretense of Pollina having been required to attend an emergency under Public Service Law § 47.

### AS AND FOR A SIXTY FOURTH CAUSE OF ACTION
### General City Law § 27-a[8] Hearing Requirement            64th

[181]  As and for a sixty fourth cause of action plaintiff reiterates all ¶¶s in full and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and collectively for city, state and federal punitive damages for $ 300, 000 in that General City Law § 27-a[8] stands willfully and calculatedly as set out in the paragraph immediately above.

### AS AND FOR A SIXTY FIFTH CAUSE OF ACTION            65th
### City Charter Solicitation Requirement

[182]  As and for a sixty fifth cause of action plaintiff reiterates all ¶¶s in full and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and collectively for $ 300, 000 in city, state and federal damages in that Shulman, Muller, Vidal, Law Department, Marshal and Katz failed to comply or to cause compliance with City Charter L.1962, ch 998 § 197- b[b] which required all copies of solicitations that

relate to the private use or the disposition of City-owned land *shall* be, but was not,

conveyed to the community boards where such land is located since the failure to have

complied with the Charter met the mind of Addabbo and was ultimately seized upon by

Pascale in Ordering plaintiff's arrest.

### AS AND FOR A SIXTY SIXTH CAUSE OF ACTION     66th
### City Charter Solicitation Requirement
### Punitive Damages

[183]  As and for a sixty sixth cause of action plaintiff reiterates all ¶¶s in full and

completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and

collectively for $ 900, 000 in punitive city, state and federal damages regarding the set of

facts as set out in the paragraph immediately above.

### AS AND FOR A SIXTY SEVENTH CAUSE OF ACTION     67th
### City Charter Gen Mun Law § 238

[184]  As and for a sixty seventh cause of action plaintiff reiterates all ¶¶s in full and

completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and

collectively for $ 300, 000 in city, state and federal compensatory damages in that all

defendants accepted Broadway, a private street, as shown on a Belcher Hyde map in Topo

and as shown on James F. Deehan maps in the Consulting Boro Engineer's Office,

although L.1962, ch 998, § 202[b], thru Gen Mun Law § 238, prohibits the City's

acceptance of a private street, filed in the County Clerk's Office, Broadway, as open to

vehicular traffic on private property in a meeting of the lawless mind of Addabbo,

Campagna and P.O. McManus, among and including others, as a justification for keeping

open lot 162, which was eventually seized upon by Pascale and Competello as a false basis upon which to have arrested plaintiff.

## AS AND FOR A SIXTY EIGHTH CAUSE OF ACTION     68th
## Punitive Damages ; City Charter Gen Mun Law § 238

[185]   As and for a sixty eighth cause of action plaintiff reiterates all ¶¶s in full and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and collectively for $ 600, 000 in city, state and federal punitive damages for the behavior set fourth in the paragraph immediately above.

## AS AND FOR A SIXTY NINTH CAUSE OF ACTION     69TH
## City Charter § 197-c[2], [c11]

[186]   As and for a sixty ninth cause of action plaintiff reiterates all ¶¶s in full and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and collectively for $ 300, 000 in city, state and federal compensatory damages in that § 197-c of the City Charter requires, but defendants failed to cause, applications by any person for changes, approvals or authorization respecting the use, development or improvement of real property subject to city regulation shall be reviewed pursuant to a uniform review procedure in the category of:

[Category 2]          § 197-c[2] Maps of subdivisions or plattings of land into streets,

avenues or public places pursuant to section two hundred two; and

§ 197[c][11] Acquisition by the city of real property which met

Addabbo's mind and ultimately provided a ruse upon which Pascale, in his supervisory capacity, ordered plaintiff's arrest and in which Competello, in his inferior capacity,

arrested plaintiff when every reasonable officer knows that a private property owner has a right to block off curtilage from trespass from foreign private property on the owner's private property.

### AS AND FOR A SEVENTIETH CAUSE OF ACTION    70th
### City Charter § 197-c[2], [c11]
### Punitive Damages

[187]  As and for a seventieth cause of action plaintiff reiterates all ¶¶s in full and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and collectively for $ 600, 000 in city, state and federal punitive damages on the facts as set out in the paragraph immediately above.

### AS AND FOR A SEVENTY FIRST CAUSE OF ACTION    71st
### City Charter L.1962, ch 998, § 202[a]

[188]  As and for a seventy first cause of action plaintiff reiterates all ¶¶s in full and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and collectively for $ 300, 000 in city, state and federal compensatory damages in that § 202[a] prohibits maps of a subdivision or platting of land into streets…from being received for filing in the office in which instruments affecting real property are required to be recorded…unless such map shall have been reviewed and approved pursuant to section 197-c and section one hundred ninety-7-d and yet Cicciariello filed Map # 1 of the Boathouse Lots and Cicciariello filed the Index to Street Status Map [51] in the Topographical Unit Office without either having been reviewed or approved by the

---

[51] Exhibit 2 Document 85 ,Trans., 10 cv 3438, 2011 Mar 22, pg 109, line 6 - pg 110, line 2

Department of City Planning as required by the City Charter, Chap 8 § 197-c[2]

[ Uniform Land Use Review of Maps of subdivisions or plating of land into streets] and §

197-d [ City Council Review of the approval]

### AS AND FOR A SEVENTY SECOND CAUSE OF ACTION      72nd
### City Charter L.1962, ch 998, § 202[a]
### Punitive Damages

[189]  As and for a seventy second cause of action plaintiff reiterates all ¶¶s in full and

completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and

collectively for $ 600, 000 in city, state and federal compensatory damages as set out in

the paragraph immediately above.

### AS AND FOR A SEVENTY THIRD CAUSE OF ACTION      73rd
### City Charter L.1962, ch 998, § 202[b]

[190]  As and for a seventy third cause of action plaintiff reiterates all ¶¶s in full and

completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and

collectively for $ 300, 000 in city, state and federal compensatory damages in that

City Charter L.1962, ch 998, § 202[b] prohibited all defendants from having deemed the

arrest area a street without lie within the lines of the arrest area having been placed upon

the city map and yet all defendants did so.

### AS AND FOR A SEVENTY FOURTH CAUSE OF ACTION      74th
### City Charter L.1962, ch 998, § 202[b]
### Punitive Damages

[191]  As and for a seventy fourth cause of action plaintiff reiterates all ¶¶s in full and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all defendants, separately and collectively for $ 300, 000 in city, state and federal punitive damages on the facts as set out in the paragraph immediately above.

**AS AND FOR A SEVENTY FIFTH CAUSE OF ACTION      75th**
**City Charter L.1962, ch 998, § 197-c[b][1]**

[192]  As and for a seventy fifth cause of action plaintiff reiterates all ¶¶s in full and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all 25 defendants, separately and collectively for $ 300, 000 in city, state and federal compensatory damages in that § 197-c[b][1] requires that the following documents shall be filed with the department of city planning; applications….by *any* person for changes, approvals or authorization respecting the use, development or improvement of real property subject to city regulation.

**AS AND FOR A SEVENTY SIXTH CAUSE OF ACTION      76th**
**City Charter L.1962, ch 998, § 197-c[b][1]**
**Punitive Damages**

[193]  As and for a seventy sixth cause of action plaintiff reiterates all ¶¶s in full and completely and sues, under 42 U.S.C. §§ 1983 and 1985, all 25 defendants, separately and collectively for $ 600, 000 in city, state and federal punitive damages on the facts as set out in the paragraph immediately above.

**TIMELINE RESUMED**

[194] Defendant Pascale commanded the 106th precinct for years before plaintiff's arrest on or about 2013 Aug 08.

[195] Before ordering plaintiff's arrest on or about 2013 Aug 08 Pascale had read complaints by Gounden's neighbors complaining about Gounden's attempts to block off lot 162 which blocked their personal vehicular and pedestrian accesses to their personal properties and residences.

[196] Before ordering plaintiff's arrest on 2013 Aug 08 Pascale investigated the neighbors' complaints and learned that there was no official record of a public street, public easement or foreign private easement, mapped or unmapped, on lot 162 on any Official Final or Alteration map signed by the Board of Estimate or in any deed or in any zoning regulation.

[197] Before ordering plaintiff's arrest on 2013 Aug 08 Gounden explained to defendant Pascale that Gounden had told Con Edison workers the day before that lot 162 was Gounden's private property and that they had trespassed Gounden's private property without the warrant necessary to have done so and that Gounden ordered them to leave and they did.

[198] Before ordering plaintiff's arrest, Gounden explained to defendant Pascale that the Con Edison workers trespassed Gounden's private property to reach the area where they were. Pascale said he was not concerned with Con Edison's trespass.

[199] Before ordering plaintiff's arrest, plaintiff asked defendant Pascale was there an emergency and what emergency there was if there were one.

[200]  Before arresting plaintiff, defendant Pascale responded to the emergency question

[201]  The accusatory instrument did not allege facts that would constitute an electrical

emergency under Public Service Law §§ 47 [1][a], 1[b] or [2].

or under Con Edison policy.

[202]  Pascale did not attempt to obtain a warrant or Order from a judge to remove

obstacles preventing Con Edison from trespassing lot 162.

[203]  Pollina did not identify any location to Pascale or Competello where an emergency

described in Public Service Law § 47 applied to Pollina.

[204]  The accusatory instrument, did not denote the name of the public street that

plaintiff allegedly blocked.

[205]  The accusatory instrument did not identify a public easement which appears on

any Official Final or Alteration map signed by the Board of Estimate or that appears in

any zoning regulation or deed.

[206]  Defendant Pascale, before arrest, was aware that a " narrow dirt thruway " on

private property does not transform said thruway into a public property thruway.

[207]  As a result of defendant Pascale's order to arrest, plaintiff was then imprisoned for

a period of about four days until bail was paid.

[208]  Regarding a ticket Gounden received for having a fence that was unauthorized for

fences fronting streets, Queens Administrative Law Judge Velly Polycarpe [ALJ] ruled,

on 2013 Dec 12, on Building Department's ticket violation number 350 056  54J, " [52]

---

[52] Exhibit  - ALJ ruling that the arrest area abutted no public street or easement

Inspector Chatzis conceded that had he understood the area and the purpose of the

footpath which *he though was a street* for vehicular traffic he would not have issued the

NOV ".

[209] The Environmental Control Board, on 2014 May 29, in appeal no. 140 019 1,

affirmed ALJ Polycarpe's " no street " ruling holding that "...Respondent refuted

Petitioner's case by showing that the 8-foot chain link was not on his property and that

any other fence on his property did not front a street. " [53]

### AS AND FOR A SEVENTY SEVENTH CAUSE OF ACTION   77th
### False Arrest

[210]  As and for a seventy seventh cause of action plaintiff reiterates all paragraphs in

full and completely and sues, under 42 §§ 1983, 1985, defendant Pascale for $100,000 for

violating plaintiff's state right and for $100, 000 separately for violating plaintiff's

federal right to be privileged from arrest for unlawful imprisonment, and each charge, in

that without a Court Order and without a communicated Public Utility emergency within

the meaning of Public Service Law § 47 or without a reasonable map, deed or zoning

regulation-based determination that private property owner B is not privileged from arrest

for blocking trespassers from being on someone else's private property A and using

private property owner B's private property to egress from private property A through

property B to arrive at property C.

### AS AND FOR A SEVENTY EIGHTH CAUSE OF ACTION     78th
### PUNITIVE DAMAGES: False Arrest

---

[53] Exhibit - Environmental Control Board affirmation of ALJ ruling

**[211]**  As and for a seventy eighth cause of action plaintiff reiterates each and every paragraph from 1 to 86 in full and completely and sues, under 42 §§ 1983, 1985, defendants Pascale, , and Competello separately in punitive damages for $200,000 each for violating plaintiff's state rights and for $200, 000 separately for violating plaintiff's federal right not to have been arrested for unlawful imprisonment under the conditions in paragraph immediately above.

### AS AND FOR A SEVENTY NINTH CAUSE OF ACTION          79th
### Following A Lawful Calling

**[212]**  As and for a seventy ninth cause of action plaintiff reiterates all paragraphs in full and completely and sues, under 42 §§ 1983, 1985, Pascale,  and Competello each and separately for $100,000 in compensatory damages for violating plaintiff's state right and sues Pascale,  and Competello each for $100,000 in compensatory damages for violating plaintiff's federal right to follow plaintiff's calling.

### AS AND FOR A EIGHTIETH CAUSE OF ACTION          80th
### Punitive Damages : Following A Lawful Calling

**[213]**  As and for a eightieth cause of action plaintiff reiterates all paragraphs in full and completely and sues, under 42 §§ 1983, 1985, Pascale,  and Competello each and separately for $200,000 in punitive damages for violating plaintiff's state right and sues Pascale,  and Competello each for $200,000 in punitive damages for violating plaintiff's federal right to follow plaintiff's calling.

### AS AND FOR A EIGHTY FIRST CAUSE OF ACTION     81st
### False Imprisonment

[214]  As and for an eighty first cause of action plaintiff reiterates all paragraphs in full

and completely and sues, under 42 §§ 1983, 1985, Pascale,  and Competello separately

for $100,000 in compensatory damages for violating plaintiff's state right against false

imprisonment and sues Pascale,  and Competello separately for $100,000 in

compensatory damages for violating plaintiff's federal right against false imprisonment

stemming from plaintiff preventing trespass from someone else's private property onto

Gounden's private property.

### AS AND FOR A EIGHTY SECOND CAUSE OF ACTION     82d
### Punitive Damages ; False Imprisonment

[215]  As and for an _____ cause of action plaintiff reiterates all paragraphs in full

and completely and sues, under 42 §§ 1983, 1985, Pascale,  and Competello separately

for $200,000 in punitive damages for violating plaintiff's state right against false

imprisonment and sues Pascale,  and Competello separately for $200,000 in punitive

damages for violating plaintiff's federal right against false imprisonment stemming from

plaintiff preventing trespass from someone else's private property onto Gounden's private

property.

### AS AND FOR A EIGHTY THIRD CAUSE OF ACTION     83rd
### State Action : Fraudulent Pretense of Authority

[216]  As and for a eighty third cause of action plaintiff reiterates each and every

paragraph from 1 to 145 in full and completely and sues all defendants, including

Prosecutor X, Prosecutor Y, Morris, J. and Toko, J. separately and collectively, under 42

U.S.C. §§ 1983, 1985, for $100,000 each for their separate and $300,000 for their

combined roles in that Prosecutor X [a] knowingly, initially, deceptively and

administratively attempted to imply a public street on the factual portion of the

accusatory instrument [54] where Prosecutor X knew, after interviewing police and after

legal inquiry on ACRIS and other sources, that there was no public street mapped,

unmapped, in a deed or in a zoning regulation in the entire Block of 14228 and

Prosecutor X knew, or should have known, that entirety of lot 162, for fundamental

Fourth Amendment purposes, is curtilage entitled to be completely blocked off [55].

**[217]   and in that Prosecutor X, [b]** knowing there was an ongoing property dispute,

did not file the accusatory instrument in a Court with competence pursuant to § 208 of the

EDPL,

**[218]   and in that Prosecutor Y [c]** knowingly continued Prosecutor X's false

prosecutorial authority in a Court without a Public Utility emergency as defined by

Public Service Law § 47, without a public interest in the " narrow dirt thruway " reflected

in the accusatory instrument, without the Local Criminal Court's § 208 competence to

decide said public interest,

---

[54] the Prosecutor X questioned police and discovered that the complainant was attempting to leave
Gounden's neighbor's private lot by trespassing Gounden's private lot 162

[55] U.S. v Dunn, 480 U.S. 294 [1987], Dunn factors, proximity of the area to the home, is area within an
enclosure surrounding the home, the 4th Amendment nature and uses to which the area is put, and the
steps taken.

[219]  **and in that Prosecutor Y [c]** sought dismissal in the interest of justice knowing that the decision to dismiss or continue the case was firmly within the exclusive competence of the Supreme Court, Criminal Term pursuant to CPL § 170.25,

[220]  **and in that Morris, J.** dismissed the case in the interest of justice knowing that the decision to dismiss or continue the case pursuant to the lack of § 208 competence was firmly within the exclusive competence of the Supreme Court, Criminal Term pursuant to CPL § 170.25,

[221]  **and in that Toko, Serita, J.**  without administratively noting a decision on the Record of Court Action sheet, and without administratively notifying plaintiff, and without any apparent lawful assignment or competence, surreptitiously crept through the shadows of the records room and distorted the record by infiltrating a decision, dated 2013 Oct 17, into the case folder,

[222]  **and in that Toko, J.'s** 2013 Oct 17 decision now gives the pretense of plaintiff having failed to timely file a § 170.25 motion in the Supreme Court, within the meaning of pretense in Article 2 § 2 of the Civil Rights law which reads: " No authority, under any pretense whatsoever, shall [in a conspiracy] be exercised over the citizens of this state but such as is or shall be derived from and granted by the people of this state. All of which functioned to preserve or create [a] the illusion of the validity of Pascale's arrest of plaintiff and [b] the illusion of the validity of the process after Pascale's arrest of plaintiff.

**AS AND FOR A EIGHTY FOURTH CAUSE OF ACTION      84th**
**Punitive State Action : Pretense of Authority**

[223]  As and for an eighty fourth cause of action plaintiff reiterates each and every paragraph from 1 to 146 in full and completely and sues defendants Prosecutor X, Prosecutor Y and Morris, J. and Toko, J. separately and collectively, under 42 U.S.C. §§ 1983, 1985, for $200,000 each for their separate and $800,000 for their collective actions in punitive damages for their combined roles as set out in paragraph [146].

### AS AND FOR A EIGHTY FIFTH CAUSE OF ACTION          86th
### Federal Action : Pretense of Authority; Fraud

[224]  As and for a eighty fifth cause of action plaintiff reiterates each and every paragraph from 1 to 147 in full and completely and sues defendants Prosecutor X, Prosecutor Y and Morris, J. separately and collectively, for violating plaintiff's federal rights against fraud under 42 U.S.C. §§ 1983, 1985, for $100,000 each for their separate and $400,000 for their combined as set out in paragraph [146]

### AS AND FOR A EIGHTY SIXTH CAUSE OF ACTION          86th
### Punitive Federal Action : Pretense of Authority:Fraud

[225]  As and for a fifty seventh cause of action plaintiff reiterates each and every paragraph from 1 to 150 in full and completely and sues all defendants, including Prosecutor X, Prosecutor Y and Morris, J. separately and collectively, under 42 U.S.C. §§ 1983, 1985, for $200,000 each for their separate and $800,000 for their collective actions in punitive damages for their combined roles as set out in the paragraph immediate above.

### AS AND FOR A EIGHTY SEVENTH CAUSE OF ACTION          87th
### Richard Brown's Failure to train and supervise on Property Related Arrests

[226] As and for an eighty seventh cause of action plaintiff reiterates all paragraphs in full and completely and sues Richard A. Brown for $100,000 for failing to properly train and supervise Prosecutor X and Prosecutor Y in protocols involving land disputes, determining boundaries, ownership and public property and the controlling overarching nature of the Eminent Domain Procedure Law and the dominant roles of the Department of City Planning, the Board of Estimate, the City Council, the Mayor's Office and L. 1962, ch 998, § 202[b] of the City Charter in establishing public streets.

### AS AND FOR A EIGHTY EIGHTH CAUSE OF ACTION 88th
### Admin. Judge Lawrence K. Marks Failure to train and supervise Morris, J. and Toko, J.

[227] As and for a eighty ninth cause of action plaintiff reiterates all paragraphs in full and completely and sues Marks, J. for $100,000 for administratively failing to properly train and supervise Morris, Gia, J. in jurisdictional protocols involving § 170.25 removals, land disputes, determining boundaries, private property, public property and the controlling overarching nature of the Eminent Domain Procedure Law and the dominant roles of the Department of City Planning, the Board of Estimate, the City Council, the Mayor's Office and L.1962, ch 998, § 202[b] of the City Charter in site-plan review and in establishing public streets.

### AS AND FOR A EIGHTY-NINTH CAUSE OF ACTION 89th
### Malicious Prosecution

[228] As and for an eighty ninth cause of action plaintiff reiterates all paragraphs in full and completely and sues, under 42 §§ 1983, 1985, Pascale, Competello and Pollina separately for $100,000 in compensatory damages for violating plaintiff's state right and

sues Pascale, and Competello separately for $100,000 in compensatory damages for

violating plaintiff's federal right against malicious prosecution of unlawful imprisonment

by blocking a public street, obstruction of governmental administration and disorderly

conduct stemming from plaintiff preventing trespass from someone egressing foreign

private property onto Gounden's domestic private curtilage where the proceedings

terminated in the interests of justice which were not requested by, consented or known to

plaintiff thereby terminating in plaintiff's favor where there is no public street, no

probable or reasonable cause to believe that Gounden, or his agents, did not have full 4th

and 5th Amendment authority to barricade lot 162's curtilage.

### AS AND FOR A NINETIETH CAUSE OF ACTION        90th
### PUNITIVE DAMAGES: Malicious Prosecution

**[229]** As and for an ninetieth cause of action plaintiff reiterates all paragraphs in full and

completely and sues, under 42 §§ 1983, 1985, Pascale, Competello and Pollina separately

for $200,000 in punitive damages for violating plaintiff's state rights and sues Pascale

and Competello separately for $200,000 punitive damages for violating plaintiff's federal

right against malicious prosecution stemming the pursuit of a prosecution that knowingly

dissolved a public purpose.

### AS AND FOR NINETY FIRST CAUSE OF ACTION        91st
### Abuse of Process

**[230]** As and for an ninety first cause of cause of action plaintiff reiterates all paragraphs

in full and completely and sues, in individual and official capacities, under 42 §§ 1983,

1985, Pascale, Competello and Pollina separately and collectively for $100,000 in

compensatory damages for violating plaintiff's state right against abuse of process in that Pollina abused the legal process by knowingly trespassing Gounden's private property and issuing a supporting deposition falsely attesting to Gounden's property as public.

## AS AND FOR A NINETY SECOND CAUSE OF ACTION   92nd
### Abuse of Process

[231]  As and for an ninety second cause of action plaintiff reiterates all paragraphs in full and completely and sues, under 42 §§ 1983, 1985, Pascale, Competello and Pollina separately and collectively for $300,000 in punitive damages on the facts and law set out in the paragraph immediately above.


## TIMELINE RESUMED

[232]  On 2010 May 22 Gounden placed a boulder on the narrow dirt thruway on lot 162.

[233]  On 2010 May 22 members of the Fire and Police Departments arrived at lot 162 in response to some alleged neighbors' calls allegedly claiming the boulder was a fire hazard.

[234]  On information and belief, on 2010 May 22 Pascale, and certainly other white shirted-police and fire units, responded to lot 162 and remained for at least two hours.

[235]  Rocco Rinaldi responded to lot 162 on 2010 May 22.

[236]  On 2010 May 22 Rinaldi, because there was no fence, proceeded as if the land under the boulder in the arrest area was a public road.

[237]  On 2010 May 22 Gounden told Rinaldi that the boulder on lot 162 was on Gounden's private property.

[238]  On 2010 May 22 Gounden showed Rinaldi and, on info and belief, Pascale a survey by New York Survey, Inc. made by Ramzan Alli.

[239]  Ramzan Alli's survey clearly depicted lot 162 as private property with no public or foreign private easement or street of any kind.

[240]  On 2010 May 22 Gounden told Rinaldi and Pascale that no emergency vehicles could pass on the three foot wide foot path on Bayview 40 yards north of lot 162 and Rinaldi refused to address Bayview's lack of emergency vehicular access saying: " I need to have this rock moved."

[241]  On 2010 May 22 Rinaldi did not have a mapped or deeded or zoned or paper-recorded reasonable basis for concluding that the boulder was not situated on lot 162 on Gounden's private property with no public or private foreign easement or public street of any kind.

[242]  On 2010 May 22 Rinaldi did not seek or produce a court order directing the boulder be moved to permit the trespass of emergency or private vehicles.

[243] On 2010 May 22 Rinaldi was aware of a process by which he could seek possession of a court order directing the boulder be moved to permit the trespass of emergency or private vehicles.

[244]  On 2010 May 22 Rinaldi did not apply the same " life and safety " reasoning to the similarly situated area of the homes of Gounden's Northern neighbors in lots 222 [and north] and 167 [and north].

[245] On 2010 May 22 Rinaldi informed the ranking member of the police department on the scene that Gounden's boulder was unsafe for the life and safety of Gounden's eastern neighbors and Rinaldi Ordered the ranking police officer on the scene to remove the boulder.

[246] Rinaldi was required to issue fire related orders in writing to Gounden and did not.

[247] Rinaldi saw but did not order the police department to remove the fence along the northern border of lot 782 nor the fence along the southern border of lot 781 nor the fence along the southern border of lot 780 that block the legal means of ingress and egress along the real Broadway as depicted on the maps of James F. Deehan, City surveyor and on the maps of Belcher Hyde as written upon by Cicciariello.

[248] As a high ranking supervisory member of the Department of Fire, Rinaldi was required to be aware of the legal means of in and egress along Broadway, which exists between the light poles that run through lots 771 - 782.

[249] The official fire report of the 2010 May 22 incident reported that the scene that Rinaldi was at on 2010 May 22 was a " neighborly dispute ".

[250] The official fire report of the 2010 May 22 incident did not report any fire hazard.

[251] Rinaldi's assessment that lot 162 closure created a fire hazard is not consistent with the official fire report.

[252] Sgt. Wilde supervised the removal of the boulder citing [a] the lack of emergency vehicular access and P.O. McManus cited [b] the lack of Gounden's eastern neighbors' private vehicular access.

[253] Rinaldi, as a Deputy Fire Chief, was aware that City Charter, Chapter 19, § 488[3] regarding the enforcement of fire laws concedes that " The powers conferred by this section shall not extend to...interfere in any manner with the powers and duties of...the department of buildings or of the commissioner of buildings.

[254] No member of the Buildings Department was called by any member of the Police or Fire Departments to the lot 162 to assess the legality of the boulder as a fence according to the Buildings Department on 2010 May 22.

[255] Plaintiff used Gounden's vehicle, a Toyota Previa, as a fence.

[256] Toyota Previa's are 70.5 inches in height.

[257] A fence that abuts no street may have a maximum height of six feet.

[258] The Environmental Control Board, on 2014 May 29, in appeal no. 140 019 1, affirmed ALJ Polycarpe's " no street " ruling holding that "...Respondent refuted Petitioner's case by showing that the 8-foot chain link was not on his property and that any other fence on his property did not front a street. " [56]

### AS AND FOR A NINTY THIRD CAUSE OF ACTION     93rd
### City Charter, Chapter 19, § 488[3]
### Rinaldi's Encroachment on Exclusive Buildings Dept. Authority

[259] As and for a ninety third cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants, under 42 U.S.C. §§ 1983, 1985, including Rocco Rinaldi and Pascale for $300,000 for city, state and federal compensatory damages in that

---

[56]

Rinaldi, in furthering Bochiochio's and Addabbo's mindset, was without authority to have encroached on the authority of the Buildings Department in having regulated the height of the boulder/fence that was within the statutory height for fences that do not abut a street, which Pascale then applied to the Toyota Previa/fence used by the plaintiff, all of which fraudulently and illegally furthered Bochiochio's and Addabbo's mindset in unjustly controlling Gounden's land, which control resulted in plaintiff's false arrest and falsely derivative charges and conditions.

### AS AND FOR A NINETY FOURTH CAUSE OF ACTION    94th
### City Charter, Chapter 19, § 488[3]
### Rinaldi's Encroachment on Exclusive Buildings Dept. Authority
### Punitive Damages

[260]  As and for a ninety fourth cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants, under 42 U.S.C. §§ 1983, 1985, including Rocco Rinaldi and Pascale for $600,000 for city, state and federal punitive damages as set forth in the paragraph immediately above.

### AS AND FOR A NINETY FIFTH CAUSE OF ACTION    95th
### City Charter, Chapter 19, § 490[b]
### Rinaldi Failed to Reduce to Writing A Referral to the Police Department

[261]  As and for a ninety fifth cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants separately and collectively, under 42 U.S.C. §§ 1983, 1985, including Rocco Rinaldi and Pascale for $300,000 for city, state and federal compensatory damages in that Rinaldi, in furthering Bochiochio's and Addabbo's

mindset, consciously, calculatedly and without the required opinion, failed to perform the

duty of promptly writing a referral to remove the boulder to a police officer based on the

fence being "..unsafe for the life and safety of civilians living in their homes past the

boulder " [57] and that Rinaldi wanted the boulder/fence removed although the height of the

boulder/fence was within the statutory height for fences that do not abut a street, which

Pascale then without authority again misapplied to the Toyota Previa/fence used by the

plaintiff, all of which fraudulently and illegally furthered Bochiochio's and Addabbo's

mindset in unjustly controlling Gounden's land, which control created a false atmosphere

of authority to keep lot 162 open to trespass which directly resulted in plaintiff's false

arrest and other falsely derivative charges and conditions.

### AS AND FOR A NINETY SIXTH CAUSE OF ACTION    96th
### City Charter, Chapter 19, § 490[b]
### Rinaldi Failed to Reduce to Writing A Referral to the Police Department
### Punitive Damages

[262]  As and for a ninety sixth cause of action plaintiff reiterates all paragraphs in full

and completely and sues all defendants separately and collectively, under 42 U.S.C. §§

1983, 1985, including Rocco Rinaldi and Pascale for $600,000 for city, state and federal

punitive damages as factually set out in the paragraph immediately above.

### AS AND FOR A NINETY SEVENTH CAUSE OF ACTION   97th
### City Charter, Chapter 19, § 491[a][1]
### Rinaldi Failed Order In Writing The Remedying of the Boulder Condition

---

[57] *Gounden v City,* 10 cv 3438, Trans., Doc # 85, pg 76, lines 13 - 17

**[263]** As and for a ninety seventh cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants separately and collectively, under 42 U.S.C. §§ 1983, 1985, including Rocco Rinaldi and Pascale for $300,000 for city, state and federal compensatory damages in that Rinaldi, in furthering Bochiochio's and Addabbo's mindset, consciously and calculatedly refused to perform his duty "..to order in writing the remedying of the boulder/fence condition, which violated no rule or regulation or any provision of law Rinaldi was empowered to enforce based on the boulder/fence being "..unsafe for the life and safety of civilians living in their homes past the boulder " [58] and that Rinaldi wanted the fence removed although the height of the boulder/fence was within the statutory height for fences that do not abut a street, all of which fraudulently and illegally furthered Bochiochio's and Addabbo's mindset in unjustly controlling Gounden's land, which control created a false atmosphere of fire-safety authority to keep lot 162 open to trespass which directly resulted in plaintiff's false arrest and other falsely derivative charges and conditions.

**AS AND FOR A NINETY EIGHTH CAUSE OF ACTION    98th**
**City Charter, Chapter 19, § 491[a][1]**
**Rinaldi Failed Order In Writing The Remedying of the Boulder Condition**
**Punitive Damages**

**[264]** As and for a ninety eighth cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants separately and collectively, under 42 U.S.C. §§

---

[58] *Gounden v City,* 10 cv 3438, Trans., Doc # 85, pg 76, lines 13 - 17

1983, 1985, including Rocco Rinaldi and Pascale for $600,000 for city, state and federal

punitive damages as factually set out in the paragraph immediately above.

### AS AND FOR A NINETY NINTH CAUSE OF ACTION      99th
### City Charter, Chapter 19, § 491[b]
### Rinaldi Failed To Reduce Order to Writing, Varied from And Issued An Order
### Contrary To The Building Code

[265]  As and for a ninety ninth cause of action plaintiff reiterates all paragraphs in full

and completely and sues all defendants separately and collectively, under 42 U.S.C. §§

1983, 1985, including Rocco Rinaldi and Pascale for $300,000 for city, state and federal

compensatory damages in that Rinaldi, in furthering Bochiochio's and Addabbo's

mindset, consciously and calculatedly refused to perform his duty reduce "...Every...

requirement, decision and determination to writing and that Rinaldi varied from and

issued an order contrary to the building code standard of unauthorized boulder/fences, all

of which fraudulently and illegally furthered Bochiochio's and Addabbo's mindset in

unjustly controlling Gounden's land, which control created a false atmosphere of fire-

safety authority to keep lot 162 open to trespass which directly resulted in plaintiff's false

arrest and other falsely derivative charges and conditions.

### AS AND FOR A ONE HUNDREDTH CAUSE OF ACTION      100th
### City Charter, Chapter 19, § 491[a][1]
### Rinaldi Failed Order In Writing The Remedying of the Boulder Condition
### Punitive Damages

[266]  As and for a one hundredth cause of action plaintiff reiterates all paragraphs in full

and completely and sues all defendants separately and collectively, under 42 U.S.C. §§

1983, 1985, including Rocco Rinaldi and Pascale for $600,000 for city, state and federal

punitive damages as factually set out in the paragraph immediately above.

### AS AND FOR A ONE HUNDREDTH AND FIRST CAUSE OF ACTION   101st
### Civil Rights Law Article 2 § 2
### Selective Fire Assessment and Enforcement

[267]  As and for a one hundredth and first cause of action plaintiff reiterates all

paragraphs in full and completely and sues all defendants separately and collectively,

under 42 U.S.C. §§ 1983, 1985, including Rocco Rinaldi and Pascale for $100,000 for

state compensatory damages and $100,000 federal compensatory damages for selectively

removing Gounden's boulder under the pretense and fraud that Gounden's boulder, while

there was no fire or threat to life or property, was a fire hazard because the boulder

prevented emergency vehicle access while not 40 yards away the exact same conditions

of vehicular inaccessibility existed but Rocco Rinaldi and Pascale did not have those

fences removed, which fraudulently furthered Bochiochio's and Addabbo's mindset in

unjustly controlling Gounden's land, which control resulted in plaintiff's false arrest and

falsely derivative charges

### AS AND FOR A ONE HUNDREDTH AND SECOND CAUSE OF ACTION   102nd
### Civil Rights Law Article 2 § 2
### Selective Fire Assessment and Enforcement
### Punitive Damages

[268]  As and for a one hundredth and second cause of action plaintiff reiterates all

paragraphs in full and completely and sues all defendants separately and collectively, in

their individual and official capacities under 42 U.S.C. §§ 1983, 1985, including Rocco

Rinaldi and Pascale for $600,000 for state and federal punitive damages as set out in the paragraph immediately above.

### AS AND FOR A ONE HUNDREDTH AND THIRD CAUSE OF ACTION    103rd
### New York City Administrative Code Title 15, Chapter 1, § 15-101[1][3]
### Authority to Protect Legal Means of Egress

[269]  As and for a one hundredth and third cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants separately and collectively, under 42 U.S.C. §§ 1983, 1985, including Rocco Rinaldi and Pascale for $100,000 for City compensatory damages and for $100,000 for state compensatory damages and for $100,000 federal compensatory damages for the execution of Rinaldi's Orders and Rinaldi's Orders to remove the boulder which were outside Rinaldi's authority since the boulder was not in the path of the legal means of egress, which contributed to the original mindsets of Bochiochio and Addabbo, finally resulting in plaintiff's false arrest for blocking property that had no public character.

### AS AND FOR A ONE HUNDREDTH AND FOURTH CAUSE OF ACTION    104th
### New York City Administrative Code Title 15, Chapter 1, § 15-101[1][3]
### Authority to Protect Legal Means of Egress
### Punitive Damages

[269.1]   As and for a one hundredth and fourth cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants separately and collectively, under 42 U.S.C. §§ 1983, 1985, including Rocco Rinaldi and Pascale for $100,000 for City punitive damages and for $100,000 for state punitive damages and for $100,000 federal punitive damages as set out on the facts in the paragraph immediately above.

**AS AND FOR A ONE HUNDREDTH AND FIFTH CAUSE OF ACTION     105th**
**New York City Administrative Code Title 15, Chapter 2 , § 15-224**
**Service of Fire Orders**

[270]  As and for a one hundredth and fifth cause of action plaintiff reiterates all

paragraphs in full and completely and sues all defendants separately and collectively, in

their individual and official capacities under 42 U.S.C. §§ 1983, 1985, including Rocco

Rinaldi for $200,000 for city, state and federal damages for failing to perform the due

process duty of serving written fire orders on the owner of lot 162 to move the boulder on

lot 162 and refrain from replacing it as it was [allegedly] unsafe for life and safety, in that

the calculated failure to issue said order in writing to the owner was for the purpose of

concealing the lack of an enforceable fire law that was violated while Rinaldi was

assisted by Pascale in following the Order of Rinaldi in that Pascale was not required to

issue lot 162 owner a written order, all for the purpose of furthering Bochiochio's and

Addabbo's land-confiscation project which directly led to the arrest area being unsecured

by chain link fence which contributed to the illusion of a public street that was ultimately

seized upon by Pascale, Competello and Pollina in the false arrest of plaintiff for

unlawful imprisonment and all other derivable charges.

**AS AND FOR A ONE HUNDREDTH AND SIXTH CAUSE OF ACTION     106th**
**New York City Administrative Code Title 15, Chapter 2 , § 15-224**
**Service of Fire Orders**
**Punitive Damages**

[271]  As and for a one hundredth and sixth cause of action plaintiff reiterates all

paragraphs in full and completely and sues all defendants separately and collectively, in

their individual and official capacities under 42 U.S.C. §§ 1983, 1985, including Rocco

Rinaldi for $400,000 in city, state and federal punishing damages on the facts and law as

set out in the paragraph immediately above.

## AS AND FOR A ONE HUNDREDTH AND SEVENTH CAUSE OF ACTION   107th
### New York City Administrative Code Title 10, Chap. 1, § 10-154
### False Statements

[272]  As and for a one hundredth and seventh cause of action plaintiff reiterates all

paragraphs in full and completely and sues all defendants separately and collectively,

under 42 U.S.C. §§ 1983, 1985, for $12, 500 in City damages in that Bochiochio,

Addabbo, Campagna, DiVerniero, Cicciariello, Desai, Vidal and Pollina knowingly made

false statements or for knowingly falsifying or for knowingly allowing to be falsified

certificates, forms, signed  statements,  maps, applications and reports  required under the

provisions of this code or any rule or regulation of any agency promulgated thereunder,

are guilty of the offense of False Statements in that said false statements combined up and

ultimately were used to poison the atmosphere of plaintiff's arrest for unlawful

imprisonment and derivable offenses.[59]


## AS AND FOR A ONE HUNDREDTH AND EIGHTH CAUSE OF ACTION     108th
### New York City Administrative Code Title 7, Chap 1, §  7-103
### Duties Outside the Discharge of Corporation Counsel

[273]  As and for a one hundredth and eighth cause of action plaintiff reiterates all

paragraphs in full and completely and sues all defendants separately and collectively,

_____

59

under 42 U.S.C. §§ 1983, 1985, for city, state and federal damages in the amount of

$100,000 in that Corporation Counsels Vidal, Shaw and Saavedra appeared outside their

duties as Corporation Counsels when they sought condemnations without Mayoral

Authorization Orders and without demonstrating EDPL compliances as required by

Administrative Code Title 5, Chapter 3, Sub Chapter 1, § 5-308 in *Gounden v NYC* and in

*NYC v Gounden* and in *Gounden v Pascale, et. al*, and in *Posr v Pascale* in that

prosecuting and asserting public access areas under Highway Law § 189 are not

discharges of duty within the official duties of corporation counsel and which are duties

in the discharges of Town Superintendents, Town Supervisors, Town Councilpersons and

Town Boards, all of which materially contributed to the arrest area being unfenced by

chain link giving the false appearance of the legality of plaintiff's arrest for unlawful

imprisonment and all other derivable charges and the false appearance of the legality of

the order to arrest plaintiff

### AS AND FOR A ONE HUNDREDTH AND NINTH CAUSE OF ACTION  109th
### New York City Administrative Code Title 7, Chap 1, § 7-103
### Duties Outside the Discharge of Corporation Counsel
### Punitive Damages

[274]  As and for a one hundredth and ninth cause of action plaintiff reiterates all

paragraphs in full and completely and sues all defendants separately and collectively,

under 42 U.S.C. §§ 1983, 1985, for punitive city, state and federal damages in the amount

of $600,000 as factually and legally set out in the paragraph immediately above.

### AS AND FOR A ONE HUNDREDTH AND TENTH CAUSE OF ACTION   110th

**New York City Administrative Code Title 7, Chap 1, § 5-307**
**Notice of Application to Condemn**

[275]  As and for a one hundredth and tenth cause of action plaintiff reiterates all

paragraphs in full and completely and sues all defendants separately and collectively,

under 42 U.S.C. §§ 1983, 1985, for city, state and federal damages in the amount of

$100,000 in that Corporation Counsels Vidal, Shaw and Saavedra appeared outside their

duties as Corporation Counsels without filing lis pendent in a capital project proceeding,

without notice of the City's intention to apply to the supreme court for permission to

condemn as provided in § 402 [B] of the EDPL seeking condemnations without Mayoral

Authorization Orders and without demonstrating EDPL compliances as required by

Administrative Code Title 5, Chapter 3, Sub Chapter 1, § 5-308 in *Gounden v NYC* and in

*NYC v Gounden* and in *Gounden v Pascale, et. al*, and in *Posr v Pascale* prosecuting and

asserting public access areas under Highway Law § 189  that are not discharges of duty

within the official duties of corporation counsel and which are duties in the discharges of

Town Superintendents, Town Supervisors, Town Councilpersons and Town Boards, all of

which materially contributed to the arrest area being unfenced by chain link giving and

continuing to give the false appearance of the legality of plaintiff's arrest for unlawful

imprisonment and all other derivable charges and the false appearance of the legality of

the order to arrest plaintiff.

**AS AND FOR A ONE HUNDREDTH AND ELEVENTH CAUSE OF ACTION**
**New York City Administrative Code Title 7, Chap 1, § 5-307**
**Notice of Application to Condemn                         111th**

## Punitive Damages

**[276]**  As and for a one hundredth and eleventh cause of action plaintiff reiterates all paragraphs in full and completely and sues all defendants separately and collectively, under 42 U.S.C. §§ 1983, 1985, for city, state and federal punitive damages in the amount of $300,000  as set out in the paragraph immediately

## AS AND FOR THE 112TH - 119TH SEPARATE CAUSES OF ACTION
### For Violations of New York City Administrative Codes
### Title 5,  Chapter 3, Sub Chapter 1 §§ 5 - 305[a],  306, 309, 310, 315, 318, 338,

### 112-119TH

**[149]**  As and for the 112th - 119th causes of action plaintiff reiterates all paragraphs in full and completely and sues all defendants separately and collectively, under 42 U.S.C. §§ 1983, 1985, for city, state and federal damages in the amount of $700,000 in that Corporation all defendants materially contributed to the violations of Title 5 specified above, in such a way that each separate violator after Bochiochio met the mind of each preceding violator ultimately culminating in Gounden's inability to fence in the arrest area, which was calculatedly seized upon by Pascale and Competello regarding plaintiff's false arrest for unlawful imprisonment and all the other derivable charges.

## AS AND FOR THE 120TH - 127TH SEPARATE CAUSES OF ACTION
### For Violations of New York City Administrative Codes
### Title 5,  Chapter 3, Sub Chapter 1 §§ 5 - 305[a],  306, 309, 310, 315, 318, 338,
### Punitive Damages

### 120th - 127th

**[277]**  As and for the 120th - 127th causes of action plaintiff reiterates all paragraphs in full and completely and sues all defendants separately and collectively, under 42 U.S.C.

§§ 1983, 1985, for city, state and federal damages in the amount of $1,400,000 as set out

in the paragraph immediately above.

## AS AND FOR 128th - 140th SEPARATE STATE
## CONSTITUTIONAL CAUSES OF ACTION        128th - 140th

For Violations of Article I § 7[a] [60], Article I § 7[c] [61], Article II § 7 [62], Article III § 1 sub § 17 [63], Article IV § 17[a] [64], Article IX § 1[b] [65], Article IX § 1[e] [66] Article IX § 2[c][ii

---

[60] § 7[a] - **All defendants** - Private roads shall mot be taken for public use without just compensation.

[61] § 7[c] - **All defendants** - Private roads may be opened in the manner prescribed by law

[62] Article II § 7 - **All defendants** - Implementation and enforcement of § 189, Opinion of Dedication and Gen City law 36[2] was effectively the choosing of a Town Superintendent of Highways, a Town Supervisor, two Town Councilpersons and a Town Board of Directors chosen not as directed by State law or City Charter

[63] Art. III § 1sub § 17 - **All defendants** have collectively and effectively passed a private and local bill ... laying out and opening a road for private use on lot 162 under § 189, Opinions of Dedications and § 36[2]

[64] Art. IV § 17[a] - **Vidal, NYC** - Town Courts are continued outside New York City and have jurisdiction prescribed legislature. NYC, Vidal, Shaw in *City v Gounden,* used the Supreme Court, Queens County under the pretense of the competence of a Town Court having been prescribed in NYC legislatively.

[65] Art. IX § 1[b] - **NYC, Vidal, Shaw, All Borough President defendants;** neither the election nor appointment of CCAs as said Town Officers nor NYC being portrayed as a Town occurred as provided by law

[66] Art. IX § 1[e] - **All defendants** - In each phase of the controlling, use and occupancy of lot 162, each defendant violated the legislature's authority to regulate the exercise of eminent domain under §§ 705, 208 of the EDPL

[6] [67] , Article IX § 2[a] [68] , Article IX § 2[b][2] [69], Article IX § 2[c][ii][6] [70] and  Article XIII § 2 [71]

[278]  As and for the 128th - 140th separate State Constitutional causes of action,

plaintiff reiterates all paragraphs in full and completely and sues, under 42 §§ 1983, 1985,

all defendants in the compensatory amount of $1, 200,000 as set out in the facts as laid

out in the body of the complaint, which all culminated in the false atmosphere of a public

street and plaintiff's false arrest and all other derivable charges.

## AS AND FOR THE 141ST - 152ND SEPARATE STATE CONSTITUTIONAL CAUSES OF ACTION
### Punitive Damages                    141st - 152nd

[279]  As and for the 141st - 152nd separate State Constitutional causes of action,

plaintiff reiterates all paragraphs in full and completely and sues, under 42 §§ 1983, 1985,

---

[67] Art. IX § 2[a] - **All defendants** - Each defendant separately and collectively violated the legislature's power to create the organize the local government of NYC and essentially created and organized a new and unauthorized City/Town government

[68] Art. IX § 2[b][2] - **All defendants** - collectively violated the legislature's power to exclude § 189 when local governments act in relation to property affairs on Gounden's land in NYC and violated the legislature's power to require acts in relation to property affairs to be by special law or by 2/3 the legislative membership and without a certificate of necessity from the Governor of the State of New York

[69] Art. IX § 2[c][i] - **All defendants** - Each defendant separately and eventually collectively adopted and effectively amended Highway Law § 189, Common Law Dedications without owners' signatures and Gen City Law § 36[2] as exceptions to, were inconsistent with but not limited to: [i] provisions of the New York State Constitution ; Gen Obl Law § 5-703 subd, [1] ; §§ 705, 208 EDPL ; Canal law 40[1] ; L.1962, ch 998 §§ 197-a, 197-b, 197-b[b], 197-c[b], 202[b] of the City Charter ; **Administrative Code** Title 3, Chap 5, §§ 3-503, 3-505, 3-506, **Administrative Code** Title 5, Chap. 3, Sub Chapter 1, sect 5-508.

[70] Art. IX § 2[c][ii][6] - **All defendants** collectively violated the legislature's power to organize local governments' acquisition, care, management and use of its alleged streets and property.

[71] Art. XIII § 2 - **All defendants** collectively created or contributed to the illicit creation of the offices and duration of the Offices of City/Town Superintendent, City/Town Supervisor and two City/Town Councils

all defendants in the punitive amount of $2, 400,000 as set out in the facts as laid out in the paragraph immediately above.

## TIMELINE

[280]  DiVerniero testified to providing more than fifty " dedication affidavits " [72]. Cicciariello testified that Opinions of Dedications have been in effect since at least 1996 Sep 17 when the present subject Opinion was allegedly issued [73].

[281]  Opinions of Dedication, dated 1996 Oct 18 and 1999 Nov 23, are cited in *Matter of Lauria v Hess* [74]. The term Opinions of Dedication, dated 1993 Apr 22 and 2014 Dec 23, are cited in *Berman v Children's Aid Society* [75]. The term " Opinion of Dedication " is cited in Rules governing House/site connection to sewer systems and the term is codified in the Rules of the City of New York under Title 15, Chapter 31 § 3101 and is defined as follows:

> " Opinion of Dedication" means an opinion by the Corporation Counsel that a
> street is an open and continuously traveled street dedicated for public use.

[282]  By definition a House/site connection to a sewer system occurs where a house on private property connects to a, presumably, City sewer system.

---

[72] Exhibit 2 - Transcript, *Gounden v NYC, 10 cv 3438, Doc # 85, pg 208, lines 1 - 13*

[73] Exhibit 2 - Transcript, *Gounden v NYC, 10 cv 3438, Doc # 85, pg 123 lines 1 - pg 124, line 19*

[74] 305 AD 2d 511 [App.Div. 2d dept. 2003]

[75] 2014 NY Slip Op 51909[U], Supreme Court, Richmond County, particularly instructive on implied easements, which Pollina claims he had.

[283] The definition of " Opinion of Dedication " is not authorized to apply outside a " House/site connection to a sewer system."

[284] A proposed Rule of the City of New York is transmitted to the entire City Council and the Mayor's Office.

[285] The Mayor's office reviews and reports its review to the City Counsel before.

[286] The Mayor's office's review and report of Rules of the City of New York, Title 15, Chapter 31 § 3101 includes the requirement that an Opinion of Dedication comply with the Eminent Domain Procedure law as reflected in the requirement for the Corporation Counsel's courtroom production of a Mayoral Authorization Order for any particular condemnation application filed to a Court and the the Corporation Counsel's courtroom production of documents demonstrating EDPL compliance for any particular condemnation application filed to a Court.

[287] Plaintiff has filed written complaints and requests regarding mandatory components of the facial and as applied unconstitutionality of the Opinion of Dedication in this case with the Offices of Liz Fine as counsel to the City Council, the Department of City Planning, the Public Advocate and the Queens Borough President.

[288] The lack of required responses from every political body listed directly above concerning certifying maps in the Queens Borough President's Office, police officer regarding the arrested area as a public area reflects a unified conscious § 1985 conspiratorial-decision by high level personnel in those political bodies to deprive

plaintiff of his entitlement to agency responses that would no doubt demonstrate the facial and as applied unconstitutionality of the Opinion of Dedication

[289]  The Opinion of Dedication was used to forcibly, illegally and unconstitutionally open the arrest area to trespass and Pascale, Competello and Rinaldi knowingly seized upon the unconstitutionally opened arrest area to violate plaintiff's Fourth Amendment privilege against arrest for blocking Pollina from exiting the private property of lot 772 and trespassing onto the private property of lot 162 and to violate plaintiff's Fifth Amendment and State's right to follow the calling of guarding Gounden's private land.

[290]  Sewer system installation and service are local government Enterprise Capacity events.

[291]  A local government's Enterprise Capacity event on undedicated private property is compensable and regulated by the Eminent Domain Procedure law and the Fifth Amendment of the U.S. Constitution.

**AS AND FOR A 153rd CAUSE OF ACTION
FIFTH AMENDMENT AND STATE RIGHT TO
FOLLOW A CALLING**

**153rd**

[292]  As and for an 153rd cause of action plaintiff reiterates all paragraphs in full and completely and sues, under 42 §§ 1983, 1985, all defendants, separately and collectively for $100,000 in compensatory damages for unconstitutionally interfering with plaintiff's state and for $100,000 in compensatory damages for unconstitutionally interfering with plaintiff's federal entitlement to follow a calling, in that Pascale and Competello met

Rinaldi's, Bochiochio's and Addabbo's minds by directly violating plaintiff's rights to follow plaintiff's calling to guard and occupy Gounden's land by ordering and executing plaintiff's false arrest, resulting partially from Rinaldi having ordered police to remove Gounden's boulder in 2010 under the complexion and pretense of enforcing a violated fire regulation when the Buildings Department has exclusive jurisdiction over the regulation of fences on private property that abut no street.

## AS AND FOR A 154th CAUSE OF ACTION
## FIFTH AMENDMENT AND STATE RIGHT TO
## FOLLOW A CALLING
**Punitive Damages**                                    **154th**

[293]  As and for an 154th cause of action plaintiff reiterates all paragraphs in full and completely and sues, under 42 §§ 1983, 1985, all defendants, separately and collectively for $200,000 in punitive damages for unconstitutionally interfering with plaintiff's state and for $200,000 in punitive damages for unconstitutionally interfering with plaintiff's federal entitlement to follow a calling as factually and legally set out in the paragraph immediately above.

## AS AND FOR A 156th CAUSE OF ACTION
## PERMANENT INJUNCTION AGAINST USING AN OPINION OF DEDICATION
## TO INFER AN OWNER'S DEDICATION OF LAND WITHOUT COMPLIANCE
## WITH GENERAL OBLIGATIONS LAW § 5-703 SUBD[1]
**156th**

[294]  As and for an 156th cause of action plaintiff reiterates all paragraphs in full and completely and sues, under 42 §§ 1983, 1985, all defendants, separately and collectively for a permanent injunction against the Opinion of Dedication's use to infer an owner's

gift of land to a local government without the owner's signature approving a transfer of

interest of an owner's real property without compliance with Gen Obl Law § 5-703 subd.

[1].

**AS AND FOR A 157th CAUSE OF ACTION**
**DECLARATION THAT OPINIONS OF DEDICATION THAT AUTHORIZE**
**ACQUISITIONS OF LEGAL SEWER INTERESTS IN PRIVATE PROPERTY**
**WITHOUT NOTICE, HEARING OPPORTUNITY AND PAYMENT VIOLATES**
**THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT**

**AS AND FOR A 158th  CAUSE OF ACTION**
**DECLARATION THAT A PUBLIC PRESCRIPTIVE EASEMENT THAT**
**AUTHORIZES ACQUISITIONS OF LEGAL INTERESTS IN PRIVATE**
**PROPERTY WITHOUT NOTICE, HEARING OPPORTUNITY AND PAYMENT**
**VIOLATES THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT**


**AS AND FOR A 159th CAUSE OF ACTION**
**42 U.S.C. § 1981, 1985**

[295]  As and for an 159th cause of action plaintiff reiterates all paragraphs in full and

completely and sues, under 42 §§ 1981, 1985, all defendants, separately and collectively

for $100,000 in compensatory state and for $100,000 in compensatory federal damages

for meeting and for supporting the racist-thugist mindset of defendant Addabbo in that

Addabbo, a trained and licensed attorney who, in 2006, who was a member of the City

Council that ultimately controls the opening of public streets, with no semblance of any

law in support initially condemned Gounden's property as public and later conspired with

defendant Campagna to control and keep Gounden's private property open for trespass

feigning a sewer easement, all of which was finally supported by, but not limited to,

Pascale, Competello, Rinaldi and Pollina in their respective roles, under the tint of law

[including Public Service Law § 47] in knowingly, illegally creating, condemning or

using the open condition of the arrest area, upon which Pascale, Competello and Pollina

seized in falsely arresting, imprisoning and maliciously and selectively prosecuting

plaintiff.

## AS AND FOR A 160th CAUSE OF ACTION
### 42 U.S.C. § 1981, 1985
### Punitive Damages

[296]  As and for an 160th cause of action plaintiff reiterates all paragraphs in full and

completely and sues, under 42 §§ 1981, 1985 and under 42 §§ 1983, 1985, Article 1 § 11

of the State Constitution all defendants, separately and collectively for $300,000 in

punitive state and for $300,000 in punitive federal damages for meeting and for

supporting the racist-thugist mindset of defendant Addabbo on the facts and law as set out

in the paragraph immediately above.

Dated: 2015 ~~Feb~~ MAR 01

Posr A. Posr
703 N. Orange St., Apt. 204
Wilmington, De
19801
347 753 5898
posrposr@gmail.com

Affirmed to before me on this 01 day in ~~February~~ March in the year 2015

NOTARY PUBLIC

RAVINDERPAL SINGH VIRDI
Notary Public, State of New York
No. 01VI6158276
Qualified in Queens County
Commission Expires 12-26-18