UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

POSR A. POSR,

                Plaintiff,

      - against -           15 Civ. 0584 (BMC)(LB)

DEPUTY INSPECTOR PASCALE and CITY OF
NEW YORK,

                Defendants.

---

KRIS GOUNDEN,

                Plaintiff,

      - against -           15 Civ. 4420(BMC)(LB)

CITY OF NEW YORK, DEPUTY INSPECTOR
PASCALE, and ANTHONY POLLINA, *Con Ed
Revenue Specialist*,

                Defendants.

## MEMORANDUM DECISION AND ORDER

**COGAN,** District Judge.

      Plaintiffs Kris Gounden and Posr A. Posr, both proceeding *pro* se, filed separate actions, pursuant to 42 U.S.C. § 1983 and state law, arising from their arrests on August 8, 2013, at 152 Broadway and 1 Bayview Avenue in Howard Beach, Queens, New York (collectively, the "Servient Estates"). Plaintiffs allege claims for false arrest, false imprisonment, malicious prosecution, and selective enforcement, for which they seek damages. They also request that this Court enjoin the police from ever arresting either of them at either of the Servient Estates.

      Plaintiffs are serial litigants in this Court, and the Court is familiar with the history of the litigation arising out of the Servient Estates. Although plaintiffs attempt to refer to issues raised

in their prior cases, which relate to property law and public rights of easement by the City of New York, the instant matters are much more straight-forward cases, involving Con Edison's utility easement and basic principles of probable cause. For the reasons that follow, the Court grants defendants' motions for summary judgment and denies plaintiffs' motions for summary judgment.

## BACKGROUND

The following facts are taken from defendants' Local Rule 56.1 Statements and certain of the exhibits attached to the Declaration of Gary Moy. Plaintiffs failed to dispute the facts in defendants' Statements, which are supported by admissible evidence; thus, the Court deems defendants' Statements admitted. Although plaintiffs submitted their own Local Rule 56.1 Statements, the Court struck the vast majority of the Statements as impermissible legal arguments or irrelevant and unsupported statements.

In June 2006, Gounden purchased a series of adjoining parcels of real property located on a peninsula in Queens County, New York. The properties are Lots 755, 759, 161, and 162 on Block 14338. Lot 162 encompasses the property located at 1 Bayview Avenue, Howard Beach, Queens, New York, and the deed to that property is in the name of plaintiff Gounden. Lot 759 encompasses the property located at 152 Broadway, Howard Beach, Queens, New York, and the deed to that property is in the name of plaintiff's wife, Sona Gounden. From approximately 2006 until 2012, Gounden lived at 1 Bayview Avenue with his wife and children. In 2012, Gounden and his wife separated, and he moved to his parents' home in South Ozone Park, Queens, New York. It is unclear when exactly, but it appears that sometime after the separation, Ms. Gounden moved to 152 Broadway.

Between 2007 and approximately 2011, Gounden was the Con Edison customer of record for the property located at 1 Bayview Avenue. From some time prior to and including August 8, 2013, Ms. Gounden was the Con Edison customer of record for the property located at 152 Broadway.

Con Edison is the holder of an easement granting Con Edison and its employees access to both 1 Bayview Avenue and 152 Broadway.[1] The easement arose by grant on May 31, 1923, from Hamilton Beach Estates, Inc., the then-owner and developer for the land encompassing the Servient Estates, to the New York and Queens Electric Light and Power Company (the "Power Company"). On July 31, 1945, a certificate of merger was filed with the State of New York Department of State, noting the merger between the Power Company and Con Edison.

The 1923 easement, in relevant part, conveys to the

Power Company, its successors and assignees, the right, privileges, and easement from time to time hereafter of entering upon the said premises and constructing, maintaining and operating, through, along, on, under and over the tract, its ducts, conduits, manholes, poles, cables, wires and other fixtures and apparatus, and conducting and transmitting electricity in and through such streets, courts and avenues, and supplying the same to the premises abutting thereon, and to the occupants of such premises, and to such other property or persons as the [Power Company] from time to time may desire.

There are Con Edison utility poles that provide power on each of the Servient Estates. To reach the Con Edison utility pole at 152 Broadway, which is a landlocked property, Con Edison travels through 1 Bayview Avenue.

In addition to the easement, the New York State Public Service Commission issued a tariff that allows the following:

---

[1] The distance between the Servient Estates, according to Google Maps, is a short, few-minute walking distance. The exact distance is unclear because 1 Bayview Avenue is on a public street, but 152 Broadway is on the shore and not on a public street (accordingly, Google Maps only gives the distance between 1 Bayview Avenue and the end of the public street).

> [Con Edison's] duly authorized representatives shall have the right of access to the premises of the Customer and to all of [Con Edison's] property thereon at all reasonable times for the purpose of reading and testing meters, inspecting equipment used in connection with its service, metering the demand, ascertaining and counting the connected load of the Customer's installation, installing, inspecting, maintaining and replacing where necessary, its load equipment, removing its property, or any other proper purpose . . . .

Con Edison had previously gone to the Servient Estates to read the electric meters. Prior to August 8, 2013, Gounden did not stop or prevent Con Edison from accessing his property at 1 Bayview Avenue to read his electric meter.

Plaintiff's wife had failed to pay her Con Edison bills for an extended period of time for 152 Broadway, and she came to owe approximately $5,000 in missed payments. On August 8, 2013, employees of Con Edison were present at 1 Bayview Avenue to disconnect power to 152 Broadway for this non-payment of service. Gounden was aware that his wife had not paid her electric bill for some time and that Con Edison was coming to the property to shut off service to 152 Broadway.

However, at the exact time the Con Edison employees arrived at 152 Broadway (by way of ingress through 1 Bayview Avenue), Gounden and Posr were at Queens Family Court. While both men were at Queens Family Court, Gounden received a phone call from his employee, Lloyd Sentine, who was present at 1 Bayview Avenue to do some work on the property. Sentine informed Gounden that Con Edison had trespassed on his property. Gounden then instructed Sentine to move a minivan, which was already present at the property, to block the Con Edison truck's way of egress, thus preventing the Con Edison truck, and therefore the Con Edison employees, from leaving.

Sentine complied with Gounden's direction and moved the minivan. With the path blocked by the minivan, the Con Edison truck had no alternative path to leave the general

location of 152 Broadway. After speaking to Sentine, Gounden and Posr left Queens Family Court and headed to 1 Bayview Avenue.

Having been blocked from leaving 152 Broadway by the minivan, the Con Edison employees called another Con Edison employee, Anthony Pollina, and advised him that they were being blocked from leaving and that they felt threatened. Pollina arrived on the scene to find the minivan blocking the Con Edison truck. Pollina then called 911 to report that an individual was using a vehicle to prevent the Con Edison vehicle from leaving 152 Broadway.

Officers from the 106th Precinct responded to the 911 call and were already on the scene when Gounden and Posr arrived. When Gounden and Posr arrived on scene, they told the police that the Con Edison truck and the employees were trespassing on Gounden's property. Approximately thirty minutes later, defendant Deputy Inspector Pascale arrived on the scene and surveyed the scene himself. Deputy Inspector Pascale asked Gounden for the keys to the minivan, and Gounden refused to provide the keys. Deputy Inspector Pascale subsequently asked Gounden twice to move the minivan, and both times Gounden refused. After Gounden refused the second time, Deputy Inspector Pascale directed one of the officers to place Gounden under arrest. The arrest record indicates that he was arrested for unlawful imprisonment.

After Gounden was arrested, Posr perched himself on the trunk of the minivan to prevent a tow truck, which had arrived on scene, from moving the minivan. Deputy Inspector Pascale requested that Posr remove himself from the minivan, and Posr refused. Posr also refused Deputy Inspector Pascale's request for the keys. Thereafter, Deputy Inspector Pascale also ordered Posr's arrest.

Gounden eventually received a Desk Appearance Ticket for the arrest and was released from the 106th Precinct. Gounden's criminal case, which cites a charge for Disorderly Conduct

pursuant to N.Y. Penal Law § 240.20, was dismissed on December 1, 2014, on speedy trial grounds. Posr was charged with Unlawful Imprisonment in the Second Degree pursuant to N.Y. Penal Law § 135.05, Obstructing Governmental Administration pursuant to N.Y. Penal Law § 195.05, and Disorderly Conduct pursuant to N.Y. Penal Law § 240.20. Posr was arraigned, and on October 17, 2013, Posr's criminal case was dismissed in the interest of justice.

Gounden filed a Notice of Claim relating to his August 8, 2013 arrest on February 19, 2015. Posr filed no Notice of Claim relating to his arrest.

## DISCUSSION

### I. Standard of Review

"[S]ummary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 135 (2d Cir. 2013) (internal quotation marks omitted). "In determining whether there is a genuine dispute as to a material fact, [the court] must resolve all ambiguities and draw all inferences against the moving party." Id. In ruling on a motion for summary judgment, a district court "may rely on any material that would be admissible at a trial." Lyons v. Lancer Ins. Co., 681 F.3d 50, 57 (2d Cir. 2012) (internal quotation marks omitted); see also Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp., 635 F.3d 48, 52 (2d Cir. 2011) ("[T]he nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." (internal quotation marks omitted)).

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted). A dispute is not "genuine" if no reasonable factfinder "could return a verdict for the

nonmoving party." Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). This means that the

nonmoving party must present more than a "scintilla of evidence," Del. & Hudson Ry. Co. v.

Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990) (internal quotation marks omitted), or

"some metaphysical doubt as to the material facts," Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067,

1072 (2d Cir. 1993) (internal quotation marks omitted). Nor can a party rely on "mere assertions

that affidavits supporting the motion are not credible." Gottlieb v. Cty. of Orange, 84 F.3d 511,

518 (2d Cir. 1996) (internal citations omitted).

## II. Plaintiffs' 42 U.S.C. § 1983 Claims Against the City of New York and Deputy Inspector Pascale

Plaintiffs' complaints against the City and Pascale are almost identical, as are their

briefing in support of their summary judgment motions and opposing the City defendants'

motions for summary judgment. Accordingly, the Court will consider the claims of both

plaintiffs together.

### A. False Arrest and False Imprisonment

Plaintiffs filed federal claims under 42 U.S.C. § 1983 and state claims for false arrest and

false imprisonment. In evaluating a § 1983 claims for false arrest and false imprisonment, courts

have generally looked to the law of the state in which the arrest occurred. See Ackerson v. City

of White Plains, 702 F.3d 15, 19 (2d Cir. 2012). Under New York law, the elements required for

false arrest and false imprisonment are identical. Thus, I will rely on cases analyzing false arrest

in considering both the false arrest and false imprisonment claims. "A § 1983 claim for false

arrest . . . is substantially the same as a claim for false arrest under New York law." Id. (internal

quotation marks omitted)). "[A]n action for false arrest requires that the plaintiff show that '(1)

the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the

plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise

privileged.'" Id. (quoting Broughton v. State, 373 N.Y.S.2d 87, 373 N.Y.S.2d 87, 93 (1975)).

Probable cause is a complete defense to false arrest and false imprisonment. "[P]robable

cause to arrest exists when the officers have knowledge or reasonably trustworthy information of

facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief

that the person to be arrested has committed or is committing a crime." Gonzalez v. City of

Schenectady, 728 F.3d 149, 155 (2d Cir. 2013). "Information about criminal activity provided

by a single complainant can establish probable cause when the information is sufficiently reliable

and corroborated;" however, "a report of a crime alone will not necessarily establish probable

cause," and some corroboration by the police is necessary. Oliveira v. Mayer, 23 F.3d 642, 647

(2d Cir. 1994) (internal citations omitted); see also Marin v. Viggiani, 92 Civ. 3836, 1993 WL

404098, at *6 (S.D.N.Y. Oct. 5, 1993) ("[W]hen a putative victim precisely identifies the alleged

perpetrator of a crime and there is independent evidence to support at least some of the victim's

assertions, a person of reasonable caution is warranted in believing that an offense has been

committed by the alleged perpetrator.").

Here, Deputy Inspector Pascale had probable cause to arrest both Gounden and Posr.

Pollina had called 911 and conveyed a citizen complaint that his employees, who were present at

the Servient Estates to turn the power off to a delinquent customer, were being prevented from

leaving the premises and felt threatened. When Pascale arrived on scene, he found just that, and

Gounden's and Posr's protestations that the Con Edison employees were the trespassers did not

undo the probable cause created by the citizen complaint, corroborated by the events transpiring

before Pascale, including plaintiffs' refusals to comply with police orders, and supported by his

reasonable assessment, based on his law enforcement experience, of the situation. Plaintiffs

repeatedly refused to move the minivan, causing first Gounden's arrest, followed by Posr's arrest when he sat on the minivan to block a tow truck from moving the minivan.

Because probable cause defeats claims for false arrest and false imprisonment, defendants' motions for summary judgment as to these claims are granted and plaintiffs' motions are denied.  See Zanghi v. Inc. Vill. of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985).

## B.  Malicious Prosecution

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted).  The third element is the most important here because the presence of probable cause will defeat a claim for malicious prosecution.  As established above in the analysis for false arrest and false imprisonment, probable cause existed to arrest both plaintiffs.  Thus, defendants' motions for summary judgment as to these claims are granted and plaintiffs' motions are denied.  See Zanghi, 752 F.2d at 45.

## C.  Selective Enforcement

Plaintiffs' complaints both allege federal and state constitutional violations premised on selective enforcement.  The Equal Protection Clause, which prohibits government officials from intentionally discriminating against individuals based on their race, ethnicity, gender, or national origin, see Hayden v. Cty. of Nassau, 180 F.3d 42, 48-49 (2d Cir. 1999), has also been construed to allow for a "class of one" claim, where a plaintiff "alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir.

2001); see also Fortress Bible Church v. Feiner, 694 F.3d 208, 222 (2d Cir. 2012). A plaintiff who asserts such a claim "must allege (1) that he or she was treated differently from other similarly situated individuals, and (2) that the 'treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Harlen Assocs., 273 F.3d at 499 (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)).

Plaintiffs have not pleaded or argued either element, nor have they adduced any evidence to support their claim for selective enforcement. They have presented no evidence of any individuals who unlawfully imprisoned Con Edison employees by refusing to permit the employees to leave their premises and were not arrested for such conduct. Instead, the only evidence before the Court is that both Posr and Gounden committed the same crimes and were both treated the same. Thus, summary judgment in favor of defendants is warranted.

### III.   Plaintiffs' 42 U.S.C. § 1985 Conspiracy Claim

Although § 1983 is the only statute cited by Plaintiff as the basis for the relief requested in their complaints, the Court construes (as did defendants in their briefing) plaintiffs' broad conspiracy claims to be an action brought under 42 U.S.C. § 1985. Section 1985 provides a statutory remedy where a plaintiff can prove a conspiracy to violate his civil rights. The statute applies to individuals and state actors. See Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-87 (2d Cir. 1988); Vertical Broad., Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 389 (E.D.N.Y. 2000). Section 1985 does not create any substantive rights, but rather provides a remedy for the deprivation of rights guaranteed by the United States Constitution. See Vertical Broad., 84 F. Supp. 2d at 389.

To state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). A conspiracy is an agreement between two or more individuals where one acts in furtherance of the goal of the conspiracy and each member has knowledge of the nature and scope of the agreement. See Dove v. Fordham Univ., 56 F. Supp. 2d 330, 337 (S.D.N.Y. 1999).

To state a claim under § 1985, a plaintiff must also show that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993). "Even where a plaintiff is proceeding *pro se*, [a] constitutional conspiracy claim must be pled with at least some degree of particularity." Morpurgo v. Inc. Vill. of Sag Harbor, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010) (internal quotation marks omitted). Further, it is well-settled that "in order to maintain an action under § 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted).

Here, plaintiffs have provided only conclusory and unsupported allegations of conspiracy between members of his town, political figures, and the police to deprive plaintiffs of their rights, as a basis for asking the Court to find the existence of a conspiracy. Plaintiffs' briefing in support of such a conspiracy is the same as the general claims in their complaints, and both are insufficient. The Second Circuit has repeatedly held that conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights are insufficient on the more lenient standard used to decide a motion to dismiss – and much less on a motion for summary

judgment.  See Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999); see also Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983).

Moreover, plaintiffs have not alleged or produced any evidence that there was a "meeting of the minds" as to the incident at issue – no meeting was alleged among any Con Edison employee and the other alleged actors.  Instead, plaintiffs harken back to Gounden's longstanding feud with the City of New York regarding the existence or non-existence of a public right of way easement on his property (152 Broadway is not the only landlocked property to which 1 Bayview Avenue provides access).  Plaintiffs argue that knowledge about the entire course of litigation between Gounden and the City is imputed to each Corporation Counsel and basically to everyone involved in this action.  Such an argument is meritless generally and insufficient to support a conspiracy claim.  I reject plaintiffs' attempts to misdirect the Court away from the August 8, 2013 arrests back to his previous litigation with the City, which concerned a public right of way easement.  The only actions before the Court are those arising from the August 8, 2013 arrests, and as to those arrests, plaintiffs have failed to allege or support any allegation of either "conspiratorial" actions by the instant defendants or how the instant defendants acted in concert with one another or other third parties.  See Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).  Plaintiffs' conspiracy claims are therefore dismissed.

## IV.    Plaintiffs' State Law Claims

### A.  Retention of Supplemental Jurisdiction

Having dismissed the federal claims, all that remain are the state claims.  A federal court has supplemental jurisdiction over state law claims whenever a federal law claim confers subject matter jurisdiction on the court and both claims "derive from a common nucleus of operative fact."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); see also 28 U.S.C. § 1367.  Here, there is no doubt that the state law claims, which include state law claims of false

arrest, false imprisonment, malicious prosecution, selective enforcement, and trespass, are all bound up in same common nucleus of operative facts, namely the afternoon of August 8, 2013, when plaintiffs were arrested.

Whether to exercise that supplemental jurisdiction is a separate question, and it is a question of "discretion" for the district court. Id. at 726. I recognize that the failure to dismiss a supplemental claim after dismissing a federal claim "may be an abuse of the district court's discretion," Robison v. Via, 821 F.2d 913, 925 (2d Cir. 1987); however, the Supreme Court has articulated some factors a district court may consider in determining whether to decline supplemental jurisdiction when the federal claims in an action are dismissed. Further, issues of fairness, as the Second Circuit has recognized, suggest that, "where the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking [the state law claims] down with a belated rejection of supplemental jurisdiction may not be fair.'" Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) (quoting 28 U.S.C. § 1367, Practice Commentary (1993) at 835; see also Ametex Fabrics, Inc. v. Just In Materials, Inc., 140 F.3d 101, 105 (2d Cir. 1998); Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 705 (2d Cir. 2000).

Thus, as the Supreme Court has held, a district court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent claim. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see also Ametex, 140 F.3d at 105. In applying these factors, the Second Circuit in Raucci v. Town of Rotterdam, 902 F.2d 1050 (2d Cir. 1990), recognized that there was no abuse of discretion where the district court weighed the Cohill factors and found that, "despite the dismissal of the federal claim, judicial economy and

convenience favored retention of jurisdiction" because "the completion of discovery, the determination of the third dispositive motion in this case, and the readiness of the case for trial, all favored retaining jurisdiction." 902 F.2d at 1055. Moreover, the case applied "settled" doctrines of law, "[did] not involve novel legal issues," and the district court "was familiar with the state law issues from the summary judgment motions." Id.

Here, I confront a very similar situation. Posr filed his action in January 2015 and Gounden filed his action in July 2015; discovery has been completed and the case trial-ready since November 2016. In fact, when discovery was completed, this Court set dates for the exchange of exhibits and witness lists and the Pre-Trial Conference in anticipation of trial. On separate motions by defendants, the Court vacated its previous schedule and set a schedule for summary judgment motions, of which the Court received and reviewed five motions with oppositions. Nor is this set of summary judgment motions the first set of dispositive motions that the Court is reviewing in this matter – defendants had previously moved to dismiss the complaint, but because of the reliance on materials outside of the complaint, the Court construed the motions as ones for summary judgment and denied them.

Moreover, this Court is very familiar with the issues presented by the Servient Properties, having presided over five other matters initiated by Gounden in addition to the instant two actions. In the ordinary case, litigants can simply go across the street and refile their state claims, but given the seven-year litigation history, with which this Court is uniquely familiar, the completion of discovery, the familiarity with two rounds of multiple summary judgment motions, and the absence of any novel state law issues, this Court's exercise of supplemental jurisdiction is appropriate. Judicial economy, convenience, and fairness to litigants all weigh in favor of supplemental jurisdiction.

### B. Gounden's State Trespassing Claim Against Polina

Gounden argues that his arrest, imprisonment, and prosecution were all violations of his constitutional rights because at all relevant times, he was the lawful owner of 1 Bayview Avenue and Pollina was a trespasser onto is property. Trespass is the unauthorized entry upon the land of another. See Burger v. Singh, 816 N.Y.S. 478, 480 (2d Dep't 2006). To prevail on a claim of trespass, the plaintiff must demonstrate a right to exclusive possession of the invaded property. See Curwin v. Verizon Commc'ns (LEC), 827 N.Y.S.2d 256, 257 (2d Dep't 2006) ("The essence of trespass is the invasion of a person's interest in the exclusive possession of land . . . ." (internal quotation marks omitted)).

The nature of a defendant's incursion is also relevant to a claim for trespass, and a defendant can defeat a trespass action by showing that his entry onto the property was authorized. "[A] person entering upon the land of another without permission, whether innocently or by mistake, is a trespasser." Golonka v. Plaza at Latham, 704 N.Y.S. 703, 706 (3d Dep't 2000) (internal quotation marks omitted). On the other hand, "an action alleging trespass may not be maintained where the alleged trespasser has an easement over the land in question." Curwin, 827 N.Y.S.2d at 257-58.

Here, the facts show that Con Edison had an easement over all of the properties on the peninsula wherein Gounden's properties lie to carry out maintenance, monitoring, and other electric power-related activities. Gounden recognizes that 152 Broadway is a landlocked property, and he concedes that 152 Broadway has a utility pole and that his wife had not paid her Con Edison bill. What he protests is that Con Edison had to cross over his land to get to 152 Broadway. By the terms of the easement, Con Edison did not trespass on his property to reach 152 Broadway, but rather, Con Edison entered the property pursuant to the broadly-worded easement that the utility company possesses.

It is well settled that "[t]he extent and nature of an easement must be determined by the language contained in the grant, aided where necessary by any circumstances tending to manifest the intent of the parties." Sambrook v. Sierocki, 53 A.D.3d 817, 818, 861 N.Y.S.2d 483 (3rd Dep't 2008) (internal quotation marks omitted). Here, the easement granted the Power Company, and therefore to Con Edison as the successor upon merger, a broad right to enter the Hamilton Beach Estates, which includes Gounden's properties, for a wide variety of purposes. Con Edison has a right of easement to "enter[] upon the said premises" for purposes of "constructing, maintaining and operating, through, along, on, under and over the tract, its ducts, conduits, manholes, poles, cables, wires and other fixtures and apparatus, conducting and transmitting electricity in and through such streets, courts and avenues."

The only reasonable reading of the easement is that Con Edison can enter any portion of the Hamilton Beach Estates so long as the purpose is to construct, maintain, or operate the means of providing power to the Hamilton Beach Estates. The easement does not speak in terms of single lots or single properties, and I refuse to constrain the easement to mean that Con Edison can only enter upon a lot of land so long as Con Edison is only servicing that lot of land. To narrow the easement in the way Gounden argues would mean that if Gounden's power had gone out because of rotted wires two lots over, Con Edison would have no right of access to those lots because the beneficial service is to Gounden's lot. That would make no sense.

The language of the easement itself contemplates that the supply of power may entail entry onto the Hamilton Beach Estates for properties not even within those Estates. The easement extends Con Edison's right of entry to "supplying the same [electricity] to the premises abutting thereon, and to the occupants of such premises, and to such other property or persons as the [Power Company] from time to time may desire." This grant fairly envisions a situation

where Con Edison needs to access the Hamilton Beach Estates, not for rendering electricity to the Hamilton Beach Estates, but to lands abutting the Hamilton Beach Estates. Given the broad language of the easement, it follows that Con Edison's truck, the employees who came to 152 Broadway, and Pollina were all present in the area of 152 Broadway lawfully by virtue of the easement.[2]

While New York courts have recognized that "a landowner burdened by an express easement of ingress and egress may narrow it, cover it over, gate it or fence it off," he can only do that "so long as the easement holder's right of passage is not impaired." Thibodeau v. Martin, 119 A.D.3d 1015, 1016, 990 N.Y.S.2d 274 (3rd Dep't 2014) (internal quotation marks omitted); see also Boice v. Hirschbihl, 128 A.D.3d 1215, 1216-17, 10 N.Y.S.3d 648, 650 (3rd Dep't 2015). This means that while Gounden could have narrowed the path through 1 Bayview Avenue to 152 Broadway, he had no right to block it entirely, which is what he did when he had his employee block the path. When he did that, not only did he violate the right of easement, but also, as will be discussed below, he effected an unlawful imprisonment of the Con Edison employees.

Because Pollina's presence at the Servient Estates was lawful, Gounden's claim against Pollina for trespass fails. Pollina's motion for summary judgment is granted, and Gounden's motion for summary judgment as to Pollina is denied.

### C. Plaintiffs' False Arrest, False Imprisonment, Malicious Prosecution, and Selective Enforcement Claims Against the City of New York and Deputy Inspector Pascale

Plaintiffs' state law claims overlap with the § 1983 claims, and as discussed in the § 1983 section, the analysis under state and federal law are basically identical, which would theoretically lend itself to the simple dismissal of plaintiffs' claims for the same reasons as above. However,

---

[2] Pollina argues that he never trespassed on 1 Bayview Avenue to reach 152 Broadway. Whether he did or did not is immaterial – either he entered the land pursuant to a lawful easement or he never entered, and in either case, he did not trespass.

in exercising supplemental jurisdiction, I note that the majority of plaintiffs' state law claims are barred because of both plaintiffs' failure to either file a timely notice of claim as to certain of the claims or file timely complaints as to the other claims, as required by New York law. A plaintiff cannot prosecute an action against the City, its agencies, or its employees unless the plaintiff has filed and served a notice of claim on the City within ninety days after the claim arises. N.Y. Gen. Mun. L. § 50-e(1)(a). Further, a plaintiff must file an action "within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. L. § 50-i(1)(c).

Posr filed no notice of claim, and Gounden filed his notice of claim more than ninety days after the incident. Moreover, all of the claims, save for Gounden's malicious prosecution claim, were filed more than one year and ninety days after the cause of action arose. This Court's exercise of supplemental jurisdiction over state law claims must yield to application of the notice-of-claim requirements. See Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793-94 (2d Cir. 1999) (federal courts in New York are required to apply New York's notice-of-claim statute); see also Felder v. Casey, 487 U.S. 131, 151 (1988) ("[F]ederal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state] notice-of-claim provision."). Because, "a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents, or employees," and plaintiffs failed to comply with this precondition, their untimely state law claims are dismissed. O'Leary v. City of N.Y., 938 F. Supp. 2d 410, 417 (E.D.N.Y. 2013) (internal quotation marks omitted).

Given the foregoing, plaintiffs' state false arrest and false imprisonment claims and Posr's state malicious prosecution claim are dismissed for plaintiffs' failures to comply with the New York General Municipal Law. The remaining state law claims, *i.e.*, Gounden's malicious

prosecution claim and both plaintiffs' selective enforcement claims, are dismissed because they fail for the exact reasons their federal claims fail.

## CONCLUSION

Plaintiff Gounden's motion for summary judgment [85] is denied, and defendants' motions for summary judgment [74], [79] are granted (case no. 15 Civ. 4420); plaintiff Posr's motion for summary judgment [82] is denied, and defendants' motion for summary judgment [76] is granted (case no. 15 Civ. 584). The Clerk is directed to enter judgments in each case in favor of defendants, dismissing the complaints.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Digitally signed by
Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       April 12, 2017

19